21828.  McNABB *v.* THE STATE.

DECIDED NOVEMBER 11, 1931.

*Branch & Howard,* for plaintiff in error.

BLOODWORTH, J.  The indictment in this case charged that John H. McNabb and Adger B. Chapman did have in their possession certain named "implements and things adapted, designed, and commonly used for the commission of burglary, larceny, safe-cracking, and other crimes," with the intent to use them in the commission of crime. McNabb alone went to trial. He was convicted and made a motion for a new trial, which was overruled, and he excepted.

The two special grounds of the motion for a new trial assign

error on the failure of the court to charge the law on circumstantial evidence. The substance of the State's testimony is that two officers, while patrolling the City of Decatur, saw the defendant and his partner at one or one thirty o'clock at night; that defendant's partner had a pistol, and also had a sledge-hammer, which he attempted to hide and finally threw away when seen by the officers; that defendant had a great many tools on his person; that these tools were commonly used for the commission of burglary and safe-cracking; that the defendant broke loose from the officer and ran; that as he ran he tried to throw away something, and later a pistol was found where defendant fell as he was being chased by the officer; that more burglary tools and a great many cartridges were found at the defendant's house; and that the defendant and his partner gave assumed names when they were arrested.

The offense charged in the indictment was the possession of tools commonly used for burglary and safe-cracking; and there was direct, positive evidence that the defendant had the tools in his possession, and that they were tools commonly used for the commission of burglary and safe-cracking. An arresting officer testified: "I have seen these tools before. They are the tools that fell off of McNabb's person when he stood up. These cotton gloves were in McNabb's pocket. . . . He [McNabb] *had these tools on him.* The reason I know that he had them is that *I saw them fall off his person.*" The other arresting officer swore that "the sack of tools fell from under his [McNabb's] coat. . . *I saw them drop out from under his coat.*" T. O. Sturdivant qualified as an expert as to knowledge of burglar's tools, and then testified that these tools were used for the commission of burglary and safe-cracking. He swore in part. "I am a police officer in the detective department of the City of Atlanta. I have been a police officer twenty-one and a half years, and I have been with the detective department seventeen years. . . During that seventeen years as a detective I have had occasion to handle burglary cases. I have been specially detailed on burglaries, bank robberies, safe robberies, and murder, and I have had occasion to observe the tools used by safe crackers and burglars. These tools that you have here on this table, consisting of a ten-pound sledge-hammer, one pair cotton gloves, one pair leather gloves, flash light, 45-calibre pistol, one jimmy or pinch bar, one pair pliers, pair of wrench or pipe pliers, three

screw-drivers, pair of nippers, two pick-locks, cold-chisels, tap-pins or punches, *are especially adapted and made and used in the commission of burglary and safe knocking;* that's the same as safe cracking. In my years of experience I have had years of experience in safe cracking and safe breaking cases. . . *Those are the tools commonly used.* That is as *complete set of burglar tools* as you would want to see. In fact there are even more than the ordinary burglar uses." (Italics ours.) In addition to the foregoing direct evidence, there were many circumstances proved which pointed towards the defendant's guilt. His being on the streets at one-thirty o'clock at night; his being there at that time with a partner who had a pistol and a sledge-hammer, and who tried to conceal the hammer from the officers; the circumstantial evidence as to the possession of a pistol by the defendant; his flight; the finding of some tools such as were used in burglary and also a great many cartridges in his home, and the giving of fictitious names by him and his partner. The tools exhibited in court and proven to be burglar tools were not the ones found at the defendant's home. A witness testified: "We did not find those tools at McNabb's house. We found some jimmy bars or wrecking bars in his basement, but we did not bring them into court." As shown above, these tools, with the exception of the sledge-hammer and pistol which the defendant's partner had, fell off the defendant when he stood up. "He had these tools on him."

There being abundant evidence of the defendant's guilt of the crime charged, and the evidence being not wholly circumstantial, the court did not err in failing to charge the law of circumstantial evidence, nor in overruling the motion for a new trial. *Nobles* v. *State,* 127 *Ga.* 213 (5) (56 S. E. 125); *Hegwood* v. *State,* 138 *Ga.* 274 (75 S. E. 138).

Neither was it necessary to charge the law of circumstantial evidence so far as intent was concerned. The trial judge charged that the presumption of innocence was with the defendant throughout the trial, and that the burden of proof was on the State. One is presumed to intend the natural consequences of his acts, and there being direct evidence that the defendant possessed tools commonly used for the commission of burglary and safe-cracking, and only the intent having to be inferred, the trial judge, in the absence of a

timely request, was not required to charge the law of circumstantial evidence. *Reddick* v. *State,* 11 *Ga. App.* 150 (3) (74 S. E. 901). *Judgment affirmed. Broyles, C. J., and Luke, J., concur.*