Andrew **NICHOLSON**, and **Richard Reed** Criswell, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 22053.

United States Court of Appeals Fifth Circuit.

Jan. 18, 1966.

Before MARIS,* RIVES, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellants were convicted on a four count indictment charging them with burglary of and larceny from post offices located at Bradley and Wayside, Georgia. 18 U.S.C.A. §§ 2115 and 1708. They contend that the District Court erred in refusing to suppress certain evidence obtained by state officers after arresting them and searching the car in which they were riding. They also urge that the evidence was insufficient to sustain the convictions, and that the court improperly refused a requested charge on circumstantial evidence. Appellant Criswell separately contends that he was prejudiced by the charge on flight, while it is Nicholson's position that an incriminating statement made by him to a postal inspector was inadmissible because of the delay in taking him before an United States Commissioner pursuant to Rule 5(a), F.R.Crim.P. We affirm.

Appellants, along with Elvin Criswell and Billy Hindman, were seen by two city police officers in an automobile traveling very slowly, described as creeping, along a street in Milledgeville, Georgia at approximately 2:45 A.M. on June 2, 1964. These officers had previously seen them driving slowly on the opposite side of town at 1:30 A.M. on the same morning. Milledgeville is a small town with very little traffic after midnight. When the officers saw the car the second time, they followed it for eight or nine blocks. The testimony was that the car weaved once or twice toward the center of the street, and that one or more of the occupants of the car kept looking back at the police car. The man in the right front seat appeared to be hiding something under the seat or taking something from under the seat. The car bore a Gwinnett County, Georgia license and the officers knew that three policemen had been murdered in that county a month or so earlier.

Hugh Peterson, Richard Allison, Atlanta, Ga., for appellants.

Wilbur G. Owens, Sampson M. Culpepper, Asst. U. S. Attys., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

* Of the Third Circuit, sitting by designation.

The officers signaled for the car to stop; and the driver, appellant Criswell, immediately got out of the car and approached the police car which was only a few feet away. One of the officers inspected his driver's license and determined that Criswell had not been drinking. Criswell stated that they were en route from Macon to Atlanta, became lost, and were in Milledgeville for gas. This seemingly conflicted with the fact that they had been seen in Milledgeville earlier, and also Milledgeville was some forty miles off the route from Macon to Atlanta.

One of the police officers then flashed his light into the car occupied by appellants while standing beside it for the purpose of discovering weapons or whisky which might be visible. He saw something on the rear floor of the car covered by a white sheet, and a pinch bar or crowbar laying on the right front floor board. Criswell stated that the object covered by the sheet was a radio. The officer walked around to the right front side of the automobile to look at the pinch bar and asked the occupant of the right front seat, Elvin Criswell, to step out of the car. He saw that the pinch bar had been moved and asked Elvin Criswell where it was. Elvin answered, "What pinch bar?", and denied the presence of a pinch bar. The police officer then leaned down and flashed his light under the seat. He then saw the pinch bar, and also saw that the object covered by the sheet did not appear to be a radio but resembled a check writing or money order machine. He thereupon told the four occupants of the automobile that they were under arrest.

At this point, Nicholson, who was sitting in the right rear seat, was asked to step out of the car and the officer started to remove the sheet from over the object in the rear seat. It turned out to be a post office money order writing machine. As he did so Elvin and Richard Criswell fled the scene only to be arrested later. An immediate search of the car disclosed post office rubber dating and cancelling stamps, letters, money orders and money order blanks. The officers at the time of the arrest and search knew of no particular crime that had been committed nor did they obtain an arrest or search warrant. They suspected that appellants and their companions had committed burglary in Milledgeville. They learned at about 8:00 A.M. on the same morning that the post offices at Wayside and Bradley had been burglarized during the night.

The District Court overruled a motion to suppress all of the evidence discovered by the police officers in the automobile, including the pinch bar and money order machine, on the ground that the search contravened the Fourth and Fifth Amendments. Whether this was error turns on the facts surrounding the arrest and search and these facts must be related to three questions. First, when did the arrest take place; second, was the arrest legal under the circumstances; and third, was the search reasonable within the contemplation of the Fourth Amendment as being incident to the arrest. This was the general approach of the Supreme Court in Beck v. State of Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, where the police officers arrested the petitioner and searched his automobile without an arrest or search warrant. The court said:

"There are limits to the permissible scope of a warrantless search incident to a lawful arrest, but we proceed on the premise that, if the arrest itself was lawful, those limits were not exceeded here. * * * The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the

petitioner had committed or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175–176 [69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890]; Henry v. United States, 361 U.S. 98, 102 [80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138]. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' Brinegar v. United States, supra, 338 U.S. at 176 [69 S.Ct. at 1311, 93 L.Ed. at 1891]." (379 U.S. at p. 91, 85 S.Ct. at p. 225)

■ The court also adverted to the principle that the reviewing court must evaluate the peculiar facts of each case in determining the validity of an arrest or search:

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543, 555, 39 A.L.R. 790]. * * *" (379 U.S. at p. 96, 85 S.Ct. at p. 228)

And, as a part of the test, the court inquired as to what objective fact available to the arresting officers would support a belief that the petitioner was engaged in criminal activity at the time he was arrested. What did the officers see, hear, smell or otherwise perceive that would "give them ground for belief that petitioner had acted or was acting unlawfully"?

■ Another principle involved stems from the fact that the arrest was not made under a federal statute so the validity of the arrest must be determined by the Georgia law of arrest. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Hart v. United States, 5 Cir., 1963, 316 F.2d 916; Collins v. United States, 5 Cir., 1961, 289 F.2d 129. The pertinent Georgia law provides that an arrest may be made by an officer where " * * * there is likely to be a failure of justice for want of an officer to issue a warrant." Georgia Code § 27–207.[1]

We said in Paige v. Potts, 5 Cir., 354 F.2d 212, dated December 21, 1965, that the Georgia courts may have equated this provision of the Georgia statute with the probable cause standard or engrafted a probable cause provision on the statute. Probable cause was the federal constitutional standard applied there in a habeas corpus proceeding, while here, as stated, the Georgia standard applies to the arrest by state officers for a supposedly state crime. Because Georgia has perhaps adopted a probable cause standard, we will apply both tests, i. e., whether there was likely to be a failure of justice for want of an officer to issue a warrant, and probable cause. On the question of probable cause being a basis for an arrest in Georgia, see Croom v. State, 1890, 85 Ga. 718, 11 S.E. 1035; Pistor v. State, 1963, 219 Ga. 161, 132 S.E.2d 183, and contra: Conoly v. Imperial Tobacco Co., 1940, 63 Ga.App. 880, 12 S.E.2d 398.

■ Turning now to the facts, it appears that appellants were stopped under circumstances which did not exceed the routine questioning pointed to as being permissible in Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688. The sequence of events thereafter included an inconsistent statement regarding the trip from Macon to

---

1. Georgia Code § 27–207 provides:
"An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

Atlanta and the discovery of the pinch bar by a visual inspection of the car. A pinch bar is classified as a burglary tool under the Georgia law. Georgia Code § 26–2701; McNabb v. State, 1931, 44 Ga.App. 306, 161 S.E. 369; Farlow v. State, 1939, 59 Ga.App. 881, 2 S.E.2d 500. The officer testified, in view of the circumstances to this point, that he thought appellants had committed a burglary in Milledgeville. He asked to see the pinch bar and Elvin Criswell denied the presence of it. He then looked under the front seat for it. In so doing he observed that what was claimed as a radio under the sheet was in fact a check writing or post office money order machine.

We do not think the restraint, such as it was to this point, amounted to an arrest under the Georgia law. Conoly v. Imperial Tobacco Co., supra:

> " * * * An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest. It is sufficient if the arrested person understands that he is in the power of the one arresting and submits in consequence thereof. The taking of another into custody for the purpose of investigating an alleged crime constitutes an arrest. * * * "

See also Georgia Code § 27–201. However, when the officer raised up after seeing the pinch bar and the machine, he placed the four men including appellants under arrest. We conclude that the arrest took place at this moment and before the flight of the Criswells which occurred immediately thereafter when Nicholson left his seat and the officer started to remove the sheet from the machine.

■ Having determined the time of the arrest, we hold that the surrounding facts and circumstances, already recited, support the conclusion that there was likely to be a failure of justice for want of an officer at 2:45 A.M. to issue an arrest warrant. Appellants were transients moving by motor vehicle and it would have been difficult indeed to have found them later. It would have been extremely unlikely that the evidence which indicated to the officers that a burglary had been committed could have been found at a later time, and after the vehicle moved on. The same facts and circumstances also support a finding of probable cause.

This brings us to the subsequent search and the evidence obtained thereunder. It falls into the same category as the pinch bar and money order machine. It was all admissible as being taken incident to the arrest.

■■ As the Supreme Court noted in Beck v. Ohio, supra, there are limits to the search that may take place incident to an arrest. See dissenting opinion of Justice Frankfurter in United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, where the doctrine was said to be limited to searching the person arrested and seizing visible instruments or fruits of crime. The search here did not exceed the scope of even this restrictive language. All that was taken was visible in the car; on the floor or seats or over the sun visor. This search falls within the language that officers may take possession of a burglar's tools or other proofs of guilt found upon arrest within the possession of an accused. Weeks v. United States, 1913, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, 1924, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; cf. Armada v. United States, 5 Cir., 1963, 319 F.2d 793; United States v. Gearhart, 4 Cir., 1964, 326 F.2d 412; and United States v. Williams, 6 Cir., 1963, 314 F.2d 795.

■ Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 134, is distinguishable. The prosecution there conceded that the arrest took place when the car was stopped, and no probable cause existed at that time. Ortiz v. United States, 5 Cir., 1963, 317 F.2d 277 is also distinguishable for the reason that the gun was not visible in the car.

The officers found it under the seat after a search, and the facts demonstrated only an arrest and simultaneous search based on mere suspicion. None of the other authorities relied on by appellants, including Collins v. United States, supra; and Clay v. United States, 5 Cir., 1961, 239 F.2d 196, are controlling. It is, of course, settled under the Georgia law as well as the federal law that one may not be arrested on suspicion alone, cf. Raif v. State, 1964, 109 Ga.App. 354, 136 S.E.2d 169, but there was far more than mere suspicion here.

Another theory asserted by appellants, is that no warrant could have been issued on the facts available to the officers under the Georgia law, and hence there could be no arrest based on probable cause. They rely on language in Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, for this proposition. That case teaches *inter alia,* that probable cause does not mean that an arresting officer need have in hand evidence which would suffice to convict. The Georgia arrest statutes, Georgia Code § 27–103, 27–103.1, 27–104, requires information by way of affidavit in procuring an arrest warrant as to the offense committed, the county in which committed, the time committed and, where relevant, the person against whom the offense is committed. The statute provides however that this information shall be stated as nearly as practicable, § 27–103, and provides maximum requirements in the following language:

"An affidavit complying with the following form shall, in all cases, be sufficient:

Georgia, ............... County.

"Personally came A. B., who on oath says that, to the best of his knowledge and belief, C. D. did, on the .... day of .............., in the year ......, in the county aforesaid, commit the offense of (insert here all information describing offense * * * ) and this deponent makes this affidavit that a warrant may issue for his arrest.

A. B. * * *" § 27–104 [1965 Supp.]

See also Dickson v. State, 1879, 62 Ga. 583. Here we think that what the officers knew at the time of the arrest would have been sufficient to obtain a warrant for burglary or for possessing burglar tools under the Georgia law. This satisfies the *Wong Sun* standard of having sufficient information at the time of the arrest to have procured a warrant if otherwise feasible.

With respect to the other errors assigned, we think the charge on flight was proper. Monnette v. United States, 5 Cir., 1962, 299 F.2d 847; Manual on Jury Instructions-Criminal, 33 F.R.D. 533, 586. Nor was it error to refuse the charge on circumstantial evidence as requested which was to the effect that the circumstantial evidence relied on by the government for conviction must exclude every other reasonable hypothesis save that of guilt. Holland v. United States, 1954, 348 U.S. 121, 139, 140, 75 S.Ct. 127, 99 L.Ed. 150, and see Manual on Jury Instructions-Criminal, supra, 33 F.R.D. p. 573, comment. There was no unreasonable delay in taking appellant Nicholson before the United States Commissioner and therefore the admission made to the postal inspector that he had purchased a one dollar money order the afternoon before from the Wayside post office was admissible in evidence.

With respect to the sufficiency of the evidence, it was stipulated that the post offices were burglarized. The proof showed that the evidence which appellants had possession of and which they sought to have suppressed came from these post offices, that Nicholson purchased the money order at the Wayside post office the afternoon before and that he was riding at the time with three men in the same automobile in which appellants were later arrested. A button from Elvin Criswell's coat was found in the Bradley post office. Possession of the fruits of the crime shortly after its commission justifies an inference of guilt. Herman v. United States, 5 Cir., 1961, 289 F.2d 362; Barfield v.

United States, 5 Cir., 1956, 229 F.2d 936. We think these facts were sufficient to exclude every reasonable hypothesis save that of guilt.

Affirmed.