**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Anthony ROMANO and Stanley
Yassen, Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack Riki LYNOTT, Defendant-Appellant.**

**Nos. 72–3166, 72–3171.**

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1973.

Rehearing Denied No. 72–3166
Aug. 31, 1973.

Rehearing Denied No. 72–3171
Oct. 5, 1973.

Stay Denied Oct. 23, 1973.
See 94 S.Ct. 293.

John A. Howard, Atlanta, Ga. (Court appointed), for Jack Riki Lynott.

William J. Schloth, U. S. Atty., J. Reese Franklin, O. Hale Almand, Asst. U. S. Attys., Macon, Ga., for United States.

E. Louis Adams, Albany, Ga. (Court appointed), for Michael Anthony Romano.

Martin K. Leppo, Michael A. Paris, Boston, Mass., for Stanley Yassen.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants, Jack Riki Lynott, Stanley Yassen, and Michael Anthony Romano, were tried before a jury and convicted on both counts of a two count indictment charging them with (1) violating the Dyer Act, 18 U.S.C. § 2312, by transporting a stolen automobile in interstate commerce while knowing it to have been stolen, and (2) violating the general conspiracy statute, 18 U.S.C. § 371, by conspiring to violate 18 U.S.C. § 1952 through a conspiracy to travel and cause travel in interstate commerce with intent to commit extortion in violation

of the laws of Georgia. In this case appellants have conjured a potpourri of errors, all of which we have clinically microscoped and diagnosed. Finding no infirmity, we affirm.

## I. THE PROCEEDINGS BELOW

This case first came on for jury trial on Wednesday, September 20, 1972. After six witnesses had testified, the trial judge declared a mistrial because the prosecution had made an improper opening argument. When this case came on for a second trial, on Monday September 25, 1972, appellants moved to dismiss on the ground that they were being twice put in jeopardy. The district judge denied appellants' motion, holding that there was no double jeopardy because the mistrial had been declared at appellants' behest. The second trial was then held.

Viewed in the light most favorable to the government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704, the evidence introduced at the second trial established that Oscar Stephens had been employed as a salesman in Marvin Aultman's used car businesses in Albany and Sylvester, Georgia. Beginning in 1971, Stephens and Aultman received stolen automobiles from the Boston, Massachusetts area from appellant Stanley Yassen and others, and then sold these vehicles in various Georgia automobile auctions. Apparently, Stephens and Aultman were not as diligent in paying for the stolen automobiles as they were in selling them, for by September 1, 1971, they owed Yassen several thousand dollars for automobiles he had sent down to them. The failure of Stephens and Aultman to make prompt recompense for their ill-gotten inventory precipitated the events leading to appellants' indictment and conviction.

Around September 1, 1971, appellants traveled to Albany, Georgia from Massachusetts in a green 1968 Pontiac Firebird that recently had been stolen in Quincy, Massachusetts. Appellants intended to collect the money owed by Stephens and Aultman to appellant Yassen, and in their efforts to collect this debt appellants resorted to some rather unorthodox collection practices—abduction and attempted extortion. On the evening of September 1, 1971, appellants Lynott and Yassen abducted Oscar Stephens at gunpoint from the parking lot behind his home. They drove for a short period of time, changed cars, and were joined by appellant Romano. Appellants then took Stephens to the Sylcree Motel in East Dougherty, Georgia, where they attempted to extort payments from Stephens by threatening him and his family with bodily harm. During this time, appellants were also attempting to locate Marvin Aultman in the hope of extorting payments from him.

Stephens was permitted to contact his wife from the motel. He informed her that he had been taken in a green Firebird to the Sylcree Motel, where he was being held captive and in danger. Mrs. Stephens then contacted the family attorney, Fred E. Bartlett, Jr., and informed him of her husband's plight. Attorney Bartlett contacted the Albany police department and relayed the contents of his conversation with Mrs. Stephens. He reported that Mr. Stephens had been abducted in connection with a transaction involving stolen cars and was being held at the Sylcree Motel by a group of men driving a green Firebird or Camaro. The Albany police then contacted the county police, who verified that a green Firebird was parked outside the Sylcree Motel. The next morning the Albany police, acting both on the information received from Bartlett and on supporting information supplied by the county police and the FBI, arrested appellants for kidnapping when they drove through Albany, Georgia, with Stephens. Appellants were held in state custody for fifteen days until the state grand jury declined to indict them for kidnapping. Thereafter, on September 17, 1971, appellants were arrested by the FBI for violating 18 U.S.C. § 2312.

After a four day jury trial, at which the jury heard and considered all of the evidence concerning the foregoing events, the jury found appellants guilty of (1) violating the Dyer Act, 18 U.S.C. § 2312, by knowingly transporting a stolen vehicle in interstate commerce, and (2) violating 18 U.S.C. § 371 by conspiring to travel and cause travel in interstate commerce with intent to commit extortion in violation of the laws of Georgia.

In this appeal appellants jointly attack their convictions, raising numerous points that we will deal with seriatim.[1]

## II. DOUBLE JEOPARDY

Appellants contend that their second trial violated the double jeopardy clause of the Fifth Amendment because the mistrial at the first trial was declared as a result of prosecutorial misconduct and for the benefit of the prosecution. However, a factual analysis of the events surrounding the declaration of a mistrial establishes that the mistrial was declared at appellants' behest and thus that appellants' arguments are without merit.

In its opening remarks to the jury the prosecution stated: "So the evidence will show the motive behind this extortion which is involved in this second count was that there was some nine other stolen cars involved beside this one. . . ." Appellant Yassen then moved for a mistrial on the ground that the indictment only mentioned one stolen automobile. At this point, the trial judge denied the motion.

The prosecution then continued its opening statement, saying that although the evidence would show that nine other stolen cars were involved in the case, the government expected to actually prove the theft of only three of the cars. After six witnesses had testified on the

first day of the trial, it became apparent that the government was not going to prove that all nine vehicles were stolen. The trial judge then stopped the proceedings saying:

"[T]he Court, during the day, has been researching the question of whether or not a mistrial should be granted on the remarks of the prosecuting attorney that he could prove there were nine stolen cars but was only going to establish proof that there were three, and it is the judgment of this Court that the United States has two options. It may elect to present evidence on all nine automobiles or the Court will declare a mistrial."

The government, having already admitted that it was unprepared to prove the theft of all nine vehicles, did not contest the granting of a mistrial.

Although appellants now argue that the mistrial was declared *sua sponte* by the court at the election of the government and for the government's benefit, it is clear that this is not the case. None of the defendants objected in any way to the court's declaration of a mistrial. In fact, when counsel for appellant Yassen, who has been acknowledged to be appellants' lead counsel at the trial, attempted to get the court to put off the retrial, he showed his awareness that the mistrial was being declared pursuant to his motion. He stated:

"Well, I think, if Your Honor please, although I felt that I had good grounds for a mistrial, and I think Your Honor realizes that after your clerk has perused the law. . . ."

Moreover, in denying appellants' motion to dismiss on the grounds of double jeopardy, the district judge stated his reasons for declaring the mistrial:

"[T]he basic reason for the granting of a mistrial in this case was the fact

---

1. Appellants have joined in each other's assignment of error. To the extent that our disposition of any issue raised by an appellant is applicable to another appellant, we acquiesce in this procedure.

However, our disposition of their assignments jointly in no way represents a ruling on the standing of each appellant to assert the errors relied upon by the other.

that a motion for a mistrial was made by the defendants at the time that the prosecutor in his opening statement made the statement that is in the record, that regardless of the fact that the court, in ruling on the motion, put it in the alternative, that is, by telling the United States that the United States would have to prove the theft of nine automobiles or the court would grant a mistrial, it was obvious to the court at that time that the United States was not prepared to prove nine automobiles. The prosecuting attorney had so stated, the United States did not have witnesses for nine automobiles stolen in Massachusetts. So that alternative was obviously an empty gesture.

". . . So it is the Court's view of the motion . . . that this motion was properly granted and on account of it having been initiated by the defendant in the case. . . ."

It is thus apparent that the mistrial was granted at the behest of appellants, on their behalf, and because of the prosecutor's *inadvertent*[2] prejudicial opening remarks. The law is well established that

"where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by defendants for mistrial is ordinarily assumed to remove any barrier to reprosecution, *even if the defendant's motion is necessitated by prosecutorial or judicial error.*"

United States v. Jorn, 1971, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (footnotes omitted) (emphasis added). Appellants' claim that their retrial was barred by double jeopardy, therefore must fall. *See* United States v. Iacovetti, 5 Cir. 1972, 466 F.2d 1147,

1152, cert. denied, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); United States v. Lansdown, 4 Cir. 1972, 460 F. 2d 164, 171 n. 8; United States v. Henderson, 1970, 142 U.S.App.D.C. 21, 439 F.2d 531, 532; Gregory v. United States, 1969, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1018, cert. denied, 1969, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119.[3]

## III. THE MOTIONS TO SUPPRESS

Prior to trial, appellants moved in the district court to suppress evidence seized at the time of their arrest on the grounds that (1) the arresting officers did not have probable cause to make a warrantless arrest, and (2) Rule 5(a) of the Federal Rules of Criminal Procedure had been violated by the failure of the government to bring appellants before a federal magistrate until fifteen days after their arrest. The district court denied appellants' motions, finding:

"[I]t would appear that this arrest took place on the part of the police officers of the City of Albany, within the city limits of Albany, Georgia . . . and that these police officers had more than probable cause to arrest whoever it was that was allegedly holding Oscar Stephens, a citizen of Albany, Georgia, against his will, which was the information relayed to these officers. The officers had not been furnished with the names of any alleged kidnappers or restrainers . . . and even had time permitted they could not have secured a warrant against unknown parties. If they had the names the record would indicate from the police officers viewpoint the time between the information being received by the detective, who came on at 7:00 or 7:30 in the morning, and the arrest which took place prior to 8:30 a. m., did not permit them to go

2. We are thus not faced with a case where there is any intimation that the prosecutorial impropriety causing the mistrial arose from a fear that the jury was likely to acquit. *See* United States v. Tateo, 1964, 377 U.S. 463, 467 n. 3, 84 S.Ct. 1587, 12 L.Ed.2d 448, 452 n. 3.

3. Downum v. United States, 1963, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, relied on by appellants, is not at all dispositive, for in that case a mistrial was granted *on motion of the prosecution over the defendant's objection.*

and get a warrant for anybody's arrest from a duly authorized officer. All of that leads the Court to the conclusion that this arrest was legal, and that if any evidence resulted from it that there is no basis for the evidence to be suppressed."

### A. The Warrantless Arrest

■ Appellants were arrested for violating the laws of Georgia by kidnapping Oscar Stephens. Since the arrest was not made under a federal statute, the validity of the arrest is determined by the Georgia law of arrest, Nicholson v. United States, 5 Cir. 1966, 355 F.2d 80, 83, insofar as the Georgia law of arrest comports with federal constitutional standards. Cf. Whiteley v. Warden of Wyoming State Penitentiary, 1971, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, cert. denied, 1971, 401 U. S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331. Georgia Code § 27–207 provides that an officer may make a warrantless arrest where ". . . there is likely to be a failure of justice for want of an officer to issue a warrant." Georgia has apparently engrafted a probable cause requirement onto this statute, and in ascertaining the validity of a warrantless Georgia arrest this Circuit has consistently determined both whether there was likely to be a failure of justice for want of an officer to issue a warrant and whether there was probable cause for the arrest. See Crone v. United States, 5 Cir. 1969, 411 F.2d 251, 253, cert. denied, 1969, 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed.2d 173; Nicholson v. United States, supra. See also Paige v. Potts, 5 Cir. 1965, 354 F.2d 212, 213.[4] We hold that under both standards the warrantless arrests of appellants were valid.

Appellants contend that the arresting officers lacked probable cause because (1) they relied upon a report filed by Fred E. Bartlett, Jr., which contained only a hearsay report of a conversation that he had had with Oscar Stephens' wife, and (2) they were relying upon a station house report filed by another detective rather than upon personal knowledge of the Bartlett complaint. Neither of these contentions undermines the district court's finding of probable cause.

■ Appellants were arrested on the basis of a complaint phoned in by attorney Bartlett, who related that he had been informed by Paula Stephens that her husband Oscar had been kidnapped in connection with transactions arising from the sale of stolen cars. He further informed the police that the kidnappers had parked a green Firebird or Camaro at the Sylcree Motel where they were holding Stephens captive. In order for the police

"[t]o rely on an informant's report to establish probable cause, it must first affirmatively appear that the agents were informed of:

[first] some of the underlying circumstances from which the informant concluded that his information was accurate, and [second] some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'"

United States v. Squella-Avendano, 5 Cir. 1971, 447 F.2d 575, 579, cert. denied, 1971, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369, quoting from Aguilar v. Texas, 1964, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723, 728–729. Bartlett's report was a factually detailed recitation of the information he had received from Mrs. Stephens. Bartlett himself was a credible source, an attorney at law licensed to practice in the State of Georgia. Cf. Ga.Code § 9–601. Nonetheless, it might well be contended that the officers could not have relied upon Bartlett's credibility with regard to facts supplied by a third party, since it was the third party's information upon which probable cause had to be

4. Of course, the minimum constitutional standard applicable to all warrantless arrests, state or federal, is whether the arresting officer had probable cause at the time of the arrest. Cf. Whiteley v. Warden of Wyoming Penitentiary, supra.

based. Moreover, although the police were perfectly justified in acting upon information received from a fellow officer, if Bartlett's report to that officer was unreliable, the report that was passed on to the arresting officers would necessarily also be unreliable. *Cf.* Whiteley v. Warden of Wyoming Penitentiary, *supra*, 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. However, "[i]nformation from an unidentified informant not known to be reliable, coupled with verification of that information in essential particulars, may form a basis for probable cause to arrest." United States v. Crane, 5 Cir. 1971, 445 F.2d 509, 519. *See* United States v. Gonzalez-Perez, 5 Cir. 1970, 426 F.2d 1283, 1286. In light of the fact that before the police arrested appellants, the police independently verified (1) the location and existence of the green Firebird parked outside of the Sylcree Motel, (2) the fact that Oscar Stephens was suspected by the FBI of having been involved in a transaction involving a stolen car, and (3) the fact that Oscar Stephens was in the company of three men driving a green Firebird, we hold that the police had obtained sufficient corroboration of Bartlett's report prior to the time of the arrest to provide probable cause for the warrantless arrest of appellants. Moreover, the district court's finding that there was insufficient time for the arresting officer to get a warrant is not clearly erroneous. We therefore hold that under both standards—probable cause and the likelihood of a failure of justice, the warrantless arrests of appellants were legal and the district court did not err in denying appellants' motions to suppress.

### B. Rule 5(a)

■ Rule 5(a) F.R.Crim.P. provides in pertinent part that:

"An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate . . . ."

This rule applies only to arrests made by or for federal officials, Barnett v. United States, 5 Cir. 1967, 384 F.2d 848, 857, and does not apply to arrests made under state law for state offenses. United States v. Buck, 10 Cir. 1971, 449 F.2d 262, 270. Appellants contend, however, that their arrest by state police officers was accomplished at the behest of and for the benefit of the federal government, and that evidence seized at the time of their arrest should therefore have been suppressed since Rule 5(a) was violated by the government's failure to bring appellants before a federal magistrate until fifteen days after their arrest. In asserting that the arrest was made at the behest of federal officials, appellants rely heavily on the fact that in making the arrest the state officers received information from the FBI and were followed to the scene of the arrest by the FBI.

■ The facts of this case do not support appellants' assertion that these were, in effect, federal arrests. This Circuit has previously discussed the standards for determining when an arrest is a "federal" arrest for the purposes of Rule 5(a) F.R.Crim.P. We stated:

"The necessary inquiry is whether the cooperation between state and federal officials had as its purpose a mere interchange of information and resources between two legitimate investigations, one state and the other federal, or to permit in-custody investigation and interrogation by federal officials without compliance with Rule 5(a). The purpose must be determined objectively from all surrounding circumstances. A high degree of cooperation by state officials in making the subjects available for interrogation by federal officers is not conclusive. Nor is it controlling that the individuals were taken into state custody because of information furnished state officials by federal officers, although it is relevant that federal officers stimulated the state investigation. However, the existence of a legitimate

state investigation for a suspected state offense is essential to a valid purpose, and it is important whether or not state officials will proceed with further action on the state charge independent of the outcome of the federal investigation."

Barnett v. United States, *supra,* 384 F. 2d at 858 (citations and footnotes omitted). The record in this case shows that appellants were arrested by state police officers, on state kidnapping charges, and were held in state custody for fifteen days. Only after a Georgia grand jury returned a no bill on the Georgia kidnapping charge on September 17, 1971, were appellants arrested by the FBI for violating 18 U.S.C. § 2312. On that same day, they were brought before a federal magistrate and received a preliminary hearing as required by Rule 5(a). "Where, as here, the period of state custody precedes a federal arrest, the claim of unnecessary delay is tested from the beginning of federal detention, unless collusion between state and federal authorities is shown. Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966)." United States v. Brown, 5 Cir. 1971, 459 F.2d 319, 324. Appellants have totally failed to show any unnecessary delay between the period of their federal arrest and their preliminary hearing, and in light of the fact that appellants were brought before a Georgia grand jury to ascertain if state charges could be maintained, any contentions of federal collusion are without merit. *See* Barnett v. United States, *supra.*

## IV. THE GEORGIA EXTORTION STATUTE

Appellants next assert that their motion for acquittal should have been granted because the government failed to prove the existence and the violation of the applicable Georgia extortion statute, Ga.Code § 26–1804. This contention is not meritorious. A federal judge may judicially notice the law of every state, and may inform himself or herself in any manner that he or she chooses, regardless of whether the statute is formally called to the judge's attention. Strickland v. Humble Oil and Refining Co., 5 Cir. 1944, 140 F.2d 83, 86, cert. denied, 1944, 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573. The trial judge did take judicial notice of the Georgia extortion statute, for he accurately instructed the jury concerning its elements and its relation to the charge of conspiracy to violate 18 U.S.C. § 1952.[5] Furthermore, although it was sufficient for the government to prove, as it did, that there was a conspiracy to travel in interstate commerce with intent to commit the Georgia crime of extortion, *see* United States v. Karigiannis, 7 Cir. 1970, 430 F.2d 148, 150, cert. denied, 1970, 400 U.S. 904, 91 S.Ct. 143, 27 L. Ed.2d 141; United States v. Rizzo, 7 Cir. 1969, 418 F.2d 71, 74, cert. denied, 1970, 397 U.S. 967, 90 S.Ct. 1006, 25 L. Ed.2d 260, and although there was no need for the government to prove that an extortion had been accomplished, the record amply demonstrates that appellants did in fact attempt to extort payments from Oscar Stephens and Marvin

5. The trial judge instructed the jury:
 "Now, I further charge you that there is a law of the state of Georgia which is described in this indictment as Georgia Code Annotated 26–1804, and it gives the statutory reference, that is to the book where the laws in Georgia are published, and that law refers, that is the law of the state of Georgia as described, is a crime of violence within the meaning of this federal law, and it provides under the law of Georgia that a person commits theft by extortion when he unlawfully obtains property of or from another person by threatening to inflict bodily injury on anyone or commit any other criminal offense.
 "So, in essence, Ladies and Gentlemen, it is charged that there was a conspiracy to violate a law of the United States which makes it a crime to travel in interstate commerce for the purpose of violating this law of the state of Georgia, and, of course, includes, as you will recall, the necessary ingredient of performing or attempting to perform this crime of violence."

Aultman in violation of the Georgia extortion statute.

## V. LYNOTT'S MOTION FOR A SEPARATE TRIAL

██ Lynott argues that the court erred in denying his motion for a separate trial. He contends that he was prejudiced by a joint trial because (1) he was in jail from January 15, 1971, until August 6, 1971, a period of time during which some of the vehicles for which appellants sought repayment from Stephens and Aultman were stolen, and (2) there was insufficient evidence that Lynott was actively involved in the crimes charged in the indictment. This Circuit's discussion of severerance in United States v. Harris, 5 Cir. 1972, 458 F.2d 670, 672–673, is directly applicable to Lynott's contentions:

"Defendants may be joined in indictment and in trial if 'they are alleged to have participated in the same act or transactions or in the same series of acts or transactions constituting an offense or offenses,' F.R.Crim.Pro. 8(b) and 13, unless 'it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants . . . for trial together,' F.R.Crim.Pro. 14. All appellants in this case were alleged to have conspired to commit and to have committed precisely the same crime, allegations clearly within the ambit of 8(b). Once the conditions of Rule 8(b) are satisfied, it is then 'within the sound discretion of the trial judge as to whether the defendants should be tried together or severally.' Opper v. United States, (1954), 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101.

*See also* James v. United States, 5 Cir. 1967, 416 F.2d 467, 474, cert. denied, 1970, 397 U.S. 907, 90 S.Ct. 902, 25 L. Ed.2d 87. The fact that Lynott was in jail during the period of time in which some of the vehicles for which appellants sought repayment were stolen in no way disproves his participation in the transportation of a stolen vehicle in in-

terstate commerce after he was released from jail, or his participation after his release from jail in a scheme to extort payments for vehicles stolen while he was in jail. Since these are the crimes Lynott was charged with, he has failed to evince any evidence that he was prejudiced by the denial of his motion for severance, and we hold that the district court did not abuse its discretion in denying his motion. United States v. Nakaladski, 5 Cir. 1973, 481 F.2d 289; United States v. Iacovetti, *supra*, 466 F. 2d at 1153; Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 37.

## VI. LYNOTT'S MOTION FOR A MISTRIAL

██ Lynott asserts that the trial judge erred in refusing to grant his motion for a mistrial at the second trial when the government stated that it would prove that eight other stolen vehicles were involved in appellants' transactions with Aultman and Stephens. It is Lynott's contention that the government's opening statement was misleading because it failed to state that he was in jail during the period of time during which some of these eight vehicles were stolen, and that this failure prejudiced him by leading the jury to believe that he had participated in the theft of all eight vehicles.

Evidence of criminal conduct not charged in the indictment may not be admitted if it serves solely to show the defendant's bad character or criminal propensities, *see* Michelson v. United States, 1948, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168, 173–174; however, evidence of prior criminal transactions is admissible to show the defendant's motive or intent. United States v. Nakaladski, *supra*; Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371, 1381, cert. denied, 1970, 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554. The evidence that Lynott challenges, that eight other stolen vehicles in addition to the automobile named in the indictment had been stolen and delivered to Aultman and Stephens,

was highly relevant, in proving appellants' motive and intent in conspiring to cross interstate lines to extort payment for these automobiles from Aultman and Stephens. Therefore, the trial judge did not err in refusing to declare a mistrial when the government stated that it was going to prove that eight vehicles were stolen. Moreover, the jury was informed by a stipulation agreed to by the government that Lynott had been imprisoned during the period in which some of the eight vehicles were stolen, and so his contention that the opening statement prejudiced him by leading the jury to infer that he had participated in the theft of all eight vehicles is without merit.

## VII. LYNOTT'S MOTION FOR ACQUITTAL

Lynott further contends that the court erred in denying his motion for acquittal because (A) there was insufficient evidence of interstate transportation of a stolen vehicle, (B) there was insufficient evidence of an attempted extortion against Oscar Stephens, and (C) the government withheld exculpatory evidence until the end of the trial.

### A. Interstate Transportation

■ Lynott was charged with violating 18 U.S.C. § 2312 by knowingly transporting a stolen vehicle in interstate commerce, He was arrested in Georgia in possession of a vehicle that had recently been stolen in Massachusetts. Such possession, if not satisfactorily explained, is sufficient circumstantial evidence from which the jury could reasonably have inferred both that Lynott knew that the vehicle was stolen and that he had transported the automobile or caused it to be transported in interstate commerce. United States v. Jackson, 5 Cir. 1971, 444 F.2d 1389, 1390; United States v. Lawrence, 5 Cir. 1970, 427 F.2d 95, 96. The trial judge did not err in denying Lynott's motion for acquittal on this ground.

### B. Extortion

■ Lynott argues that the trial court erred in failing to direct an acquittal "for the reason that the only evidence of an attempted extortion was against a witness named Marvin Aultman and not against Oscar Stephens as is stated in the indictment." This argument is puzzlingly inexplicable. Appellants were indicted for conspiring to travel interstate to commit the Georgia crime of extortion. The kidnapping and assault of Oscar Stephens was specifically named in the indictment as an overt act taken in furtherance of the charged conspiracy. There was ample direct evidence given by Oscar Stephens that appellants had indeed attempted to extort payment from him. Moreover, Stephens also testified to appellants' intent to extort repayment from Marvin Aultman. In light of the foregoing facts, Lynott's claim that there was insufficient evidence of an attempted extortion against either Oscar Stephens or Marvin Aultman is frivolous.

### C. The "Withheld" Evidence

■ During the trial, Lynott attempted to convince the government to stipulate that he had been in jail from January 15, 1971, until August 6, 1971. The government refused to do so until the end of the trial, when a joint stipulation was read to the jury. Lynott now contends that the government infringed his rights by withholding exculpatory testimony. It is readily apparent that the government in no way violated the prescriptions of Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215, for the evidence that the government allegedly withheld, Lynott's whereabouts from January 15, 1971, until August 6, 1971, was uniquely in Lynott's possession and could have been introduced and proved by him at any time during the trial. Nor can Lynott's contention that the government attempted to mislead the jury into believing that he had participated in stealing cars during the period when he was actually in

prison be maintained. The government stipulation that Lynott was in prison from January 15, 1971, until August 6, 1971, fully apprised the jury of this "exculpatory" evidence.

## VIII. THE TELEPHONE CALLS

■ Lynott argues that the trial court erred in admitting testimony of Oscar Stephens concerning telephone conversations that he had with Lynott and Yassen, contending that the government failed to lay a proper foundation for Stephens' testimony. More specifically he asserts that the testimony was inadmissible because (1) Stephens testified that he did not immediately recognize Lynott's voice when Lynott called him in January 1971 until "he [Lynott] stated who it was and where I had seen him before and recalled the facts;" and (2) Stephens had not yet met Yassen at the time of the telephone conversations with Yassen to which he testified. Neither of these contentions has merit. Stephens' testimony amply demonstrated that although at first he did not recognize Lynott's voice, he was able to recall it after having his memory jogged with regard to his previous face to face conversations with Lynott. Such a process of recall is epistemologically sound and does not in any way undermine the credibility of Stephens' identification of Lynott's voice.

■ Stephens also testified concerning telephone conversations that he had with appellant Yassen. He testified that in early 1970, Yassen called him and identified himself. Although Stephens had not met Yassen at the time of the conversation in question, when he did meet Yassen in September of 1971, he recognized Yassen's voice as that of the person to whom he had spoken approximately fifteen times concerning the selling of automobiles. The identification of Yassen's voice was a sufficient foundation for the admission of Stephens' testimony, for the requirement that a witness have a basis for identifying a voice as that of a particular person is satisfied even when the witness acquired his knowledge of the person's voice after the conversation testified to. *See* United States v. Moia, 2 Cir. 1958, 251 F.2d 255, 257. *Cf.* United States v. Cox, 449 F.2d 679, 690, cert. denied, 1972, 406 U.S. 934, 92 S.Ct. 1783, 32 L. Ed.2d 136.

## IX. LYNOTT'S MOTION TO SUBPOENA WITNESSES

Lynott's final contention is that the trial judge violated Rule 17(b) F.R. Crim.P. by refusing to subpoena all of the twenty-three witnesses that Lynott desired to have subpoenaed at government expense. Rule 17(b) F.R.Crim.P. provides:

"The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

The current status of Rule 17(b) has been cogently analyzed in this Circuit's opinion in United States v. Moudy, 5 Cir. 1972, 462 F.2d 694, 697–698 (footnotes omitted):

"Prior to 1966, Rule 17(b) provided that a court 'may' order a subpoena issued but that an indigent defendant requesting it was required to support his motion with an affidavit stating the testimony he expected from the witness and showing further its materiality and that the defendant could not safely go to trial without the witness. Appellant courts took the view that under the rule the grant or denial of a subpoena was committed to the sound discretion of the trial court and

was not to be disturbed in the absence of exceptional circumstances. In 1966 the rule was amended to make issuance mandatory upon 'a satisfactory showing . . . that the presence of the witness is necessary to an adequate defense.' That requirement leaves broad discretion in the district court by allowing the trial judge to weigh numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena. *See* United States v. Hathcock, 441 F.2d 197 (5th Cir. 1971); Welsh v. United States, 404 F.2d 414 (5th Cir. 1968); Findley v. United States, 380 F.2d 752 (10th Cir. 1967). But we have held, quoting Greenwell v. United States, 115 U.S. App.D.C. 44, 317 F.2d 108, 110 (1963), that the amended requirement means

> '. . . if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.
>
> '. . . That test places the burden of showing frivolity or abuse of process on the Government, where it properly belongs.'

Welsh v. United States, *supra,* 404 F. 2d at 417–418. *See* United States v. Hathcock, *supra.*"

 The trial judge found that it was unnecessary to call all of the fifteen witnesses to an allegedly exculpatory conversation because their testimony would be cumulative only, and he therefore issued Rule 17(b) subpoenas to only three witnesses to the conversation. The trial judge, acting upon information received from Lynott's counsel, also found that one of the witnesses that Lynott desired to have subpoenaed would not give relevant testimony concerning the transaction for which his testimony was being subpoenaed, and therefore the trial judge refused to issue a Rule 17(b) subpoena for that witness. Under the *Moudy* standard, it is clear that the district court did not err. District Courts have the discretion to prevent the abuse of Rule 17(b) by refusing to subpoena witnesses whose testimony would be cumulative only. *See* United States v. Chapman, 5 Cir. 1972, 455 F.2d 746, 748; Thompson v. United States, 5 Cir. 1967, 372 F.2d 826, 828. Moreover, there was no need to call the witness whose testimony would not be relevant, since irrelevant testimony is *per se* not "necessary to an adequate defense," a prerequisite showing under Rule 17(b) F.R.Crim.P.

## X. ROMANO'S MOTION FOR ACQUITTAL

Romano contends that the district court erred in denying his motion for acquittal since (A) there was no evidence that Romano ever travelled interstate, and (B) the government failed to carry its burden of proving that Romano was competent at the time of the transactions under consideration, once Romano's competency was put in issue.

### A. *Interstate Travel*

 Romano was arrested in Georgia in possession of a car recently stolen in Massachusetts. As we have said in Part VII § A, *supra,* such possession, if not satisfactorily explained, is circumstantial evidence from which the jury could reasonably infer that Romano knew the vehicle was stolen and had transported it or caused it to be transported in interstate commerce. Moreover, Count Two of the indictment charges a conspiracy to travel in interstate commerce to commit the crime of extortion, and there was ample direct evidence that some of the members of the conspiracy had travelled interstate and that Romano had joined in the conspiracy. We therefore hold that the trial court did not err in denying Romano's motion for acquittal on this ground.

## B. Competency

 Oscar Stephens testified that during the time he was held captive by appellants, appellant Romano appeared to be in a drunken or drugged condition and "acted like he might not know what he was doing." Romano contends that the trial court erred in denying his motion for acquittal because the foregoing testimony was sufficient to rebut the ordinary presumption of competency and that thereafter the government failed to carry its burden of proving Romano's competency once it had been put in issue. *See* Blake v. United States, 5 Cir. 1969, 407 F.2d 908. Romano's contention is meritless. There was absolutely no testimony, either by expert witness or by laymen, that Romano was insane. Construed most liberally, Stephens' testimony was at best evidentiary that Romano might well have been under the influence of drugs. Being voluntarily under the influence of drugs is not a legal equivalent of insanity, although it may be evidence that the defendant was incapable of forming a specific intent to commit the crimes with which he or she is charged. *Cf.* Kane v. United States, 9 Cir. 1968, 399 F.2d 730, cert. denied, 1969, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699; Parker v. United States, 1966, 123 U.S.App.D.C. 343, 359 F.2d 1009. The district judge charged the jury:

> "Now, Ladies and Gentlemen, there has been some mention during the trial of this case—and I do not recall the mention, you will be the sole judge of what mention there may have been —of drug consumption on the part of a defendant who is here on trial. And in connection with that, Ladies and Gentlemen, I charge you, although a stupor due to use of some drug, even a drug taken for medical purposes, is not alone a defense. The fact that a person may have been in a state of drug induced stupor at the time of the commission of a crime may negative the existence of a specific intent.

> "Some evidence that a defendant acted or failed to act while in stupor due to use of some drug is to be considered in determining whether or not the defendant acted or failed to act with specific intent as charged. If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his drug induced stupor, the mind of the defendant was capable of forming or did form specific intent, the jury should acquit the accused."

We hold that this charge protected Romano's rights and that the district court committed no error in denying Romano's motion for acquittal.

## XI. CONCLUSION

Appellants have raised numerous substantive and procedural attacks on their convictions. However, being firmly convinced that appellants received a fair trial and that the jury's verdict was supported by the evidence, we affirm.

Affirmed.