**UNITED STATES of America,**
**Plaintiff-Appellee,**

*v.*

**Hugh BROWN and Lewis D. Hayes,**
**Defendants-Appellants.**

**No. 30563.**

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1971.

Samuel S. Jacobson, Jacksonville, Fla. (court-appointed), for Hugh Brown & Lewis D. Hayes.

Rudy Hernandez, Asst. U. S. Atty., John L. Briggs, U. S. Atty., M. D. Fla., Jacksonville, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal illustrates the type of criminal case in which government counsel, having adequately proved sufficient facts to warrant submission of the question of the guilt of the two defendants to the jury has, through his over-zealousness, caused the court to commit error which requires a reversal of the conviction and sentence and the holding of a new trial.

The specific errors complained of in this narcotics law violation prosecution, resulting in ten and twenty year sentences respectively for the appellants, are: (1) that the trial court erred in admitting, over objection of the defendants, envelopes which had contained the alleged narcotics, and which had a detailed statement on the face of them of

the essential facts relating to the commission of the illegal sale, and the admission of an enclosed statement more fully elaborating the circumstances surrounding the sale of the narcotics; this particular error, appellants complained, was further compounded by the fact that, once introduced in evidence, these two documents, prepared outside of court, and representing a nice summary of the crime alleged, were permitted to go to the jury room for the jury deliberation; (2) the appellants claim severe prejudice by the trial court's permitting the prosecuting officer to question a government witness with respect to a "list of people who were primary targets" of the witness's under-cover investigation and permitting government counsel to ask, "Were the defendants in this case listed on that list?", to which the witness testified, "Yes, they were". It had previously been testified that this list was "specific dealers and sellers—in other words, *those that were known to the Sheriff's department * * *"* (emphasis added); and (3) government counsel's undertaking, in his final argument to the jury, to vouch for the credibility of its principal witness, and, more devastating than that, to state that in his opinion the agent's work had been "successful"—a statement from which the jury could only conclude that the prosecuting officer was stating that it was his opinion that the government agent had caught guilty persons.

As to the last of the three grounds of appeal, the government confesses error to the action by the prosecuting attorney to attempt to vouch for the credibility of his witnesses and to express his own opinion as to the guilt or innocence of the accused. However, even as to this error, the United States now contends that the error was harmless and should therefore be ignored under the Harmless Error Rule.[1]

We consider the several grounds raised by the appellants in order.

The evidence as to the purchases made from these two appellants was largely given by an undercover agent named Wilder. He testified at the trial and was subjected to rigorous cross-examination by defense counsel, who attempted to show inconsistencies between his testimony and his own reports which were obtained under the provisions of the Jencks Act. Following his testimony, the government tendered in evidence, not only the narcotics, together with the chemist's report, as to which no objection is here made, but also a fair sized manila envelope headed "TREASURY DEPARTMENT" and then under that "BUREAU OF NARCOTICS".[2] There was also contained in the envelope a further memorandum entitled "Report of Property Purchased or Seized Under Narcotic and Marihuana Laws". This report was a little more detailed in that it contained a full description as follows: "29 tin-foil packages containing suspected cocaine. 15 packages contained (illegible) match box, 14 packages contained in a piece of newspaper, 3.673 Grams, Market Value—Legitimate 'none', Market Value—Illegitimate— $155.00". As already stated, similar en-

---

1. Rule 52 Federal Rules of Criminal Procedure provides:
   "(a) Harmless Error.
   Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

2. Although it may not give a clear picture, the envelope contained the following entries (the obvious answering part as shown here was hand written following the heading of each separate line).
   "District: No. 6 Case No: (illegible) Name: Louis Hayes, et al alias Mr. Clean

Address: Jacksonville, Florida
Evidence: Two one half (illegible) suspected Cocaine
How Obtained: Purchased by Agent Wilkes
Where Obtained: Front of Sportsman Grill, 510 Broad St. Jacksonville, Florida
Date: 9/6/68
Amount Paid: $155.00
Witnesses: Agents Jessup and Curry
Agent Reporting Case: Agent Jessup
Remarks: Evidence turned over to Agent Jessup for transmittal to U. S. Chemist, Atlanta, Georgia."

velopes and the purchase report document were introduced with respect to each of five alleged transactions.

Thus, the jury had before it, not only the recollection of the oral testimony given from the stand, but it also had what has been called by the Court of Appeals for the Seventh Circuit in United States v. Ware, (7th Cir. 1957) 247 F.2d 698, "a neat condensation of the government's whole case against the defendant(s). The government's witnesses in effect accompanied the jury into the jury room." As it must, the government concedes that this case is similar to Ware. However, the government is still contending that because no specific ruling to the same effect has been made by this court, such evidence is admissible to go to the jury. The best the government can do in this regard is to point out that in two other cases cited by the appellants in which the submission of such documents for the jury's consideration was held to be error there were other considerations that brought about the reversals in addition to the particular error here complained of. For instance, as is pointed out, the case of United States v. Adams, 2d Cir., 385 F.2d 548 reversed a conviction in which similar agent's memoranda were permitted to be seen by the jury, but noted that these envelopes had not been received in evidence. Also, in Sanchez v. United States (8th Cir.), 293 F.2d 260, the court comments on the improper introduction of this kind of documentary self-serving statement as "an additional reason * * which forces the conclusion that the defendant did not have a fair trial", the court there having found there were other grounds for reversal.

█ We conclude, as did the Court of Appeals of the Seventh Circuit, that even though "the persons who made the memoranda were present at the trial and were tendered for cross-examination (and) that the memoranda were merely cumulative of other evidence properly in the record and that there was over-whelming evidence properly received of the defendant's guilt", we cannot say that the error did not influence the jury, to the defendant's detriment, or even that it had but very slight effect.

The next ground of appeal is the failure of the trial court to rule out testimony given by the government witness, Wilder, to the effect that the defendants were on a "primary target list", made up of specific dealers and sellers "that were known to the Sheriff's department". It is too obvious for comment that for the witness to be permitted to say as a part of the government's case that the two defendants on trial were on a list of primary targets which had been compiled as representing specific dealers and sellers in narcotics "that were known to the Sheriff's department" would be inadmissible hearsay in the first place as to what the Sheriff's department knew and, in the second place, it would be evidence of prior and unrelated violations of the law by these defendants. It would thus be clearly inadmissible.

The government contends that the evidence was admissible by reason of the manner in which it came in. It contends that the first reference to the primary target and the Sheriff's department came during cross-examination by one of appellant's counsel of Agent Wilder. This cross-examination came in as follows:

"Q. You made it your business to try to get in touch with as many of the pushers and sellers as you safely could?

A. I think it was specific dealers and sellers—in other words, those that were known to the Sheriff's Department—those that were known [to] agents that were working in this area. They were primary targets, in other words.

Q. Right. And you got him to introduce you to as many of those as he could?

A. The ones that he had listed, that were primary targets."

There is no record that any further question of this list or of the primary targets was contained in any other cross-examination by appellants' counsel. However, when the government prosecutor took Wilder for re-direct, he then asked the witness:

"Q. In regard to questions by Mr. Jacobson with regard to primary targets who you were introduced to, and I believe you gave the answer that you had a list of people who were primary targets?

A. That's correct.

Q. Were the defendants in this case listed on that list?

A. Yes, they were—"

Thereupon counsel objected and the court told the witness: "Hold it just a minute." After objection was completed the court stated: "I think you probably opened the door on that. I am going to over-rule the objection." Thereupon government counsel said:

"Q. Let me repeat that question, for the sake of maybe the jury didn't hear it:

Were the defendants sitting at that defense table there (indicating) listed on your primary target list?

A. Yes, they were."

▮ Even though it may be argued that the answer by Wilder to the effect that he was trying to get in touch with "those that were known to the Sheriff's department—" may have been responsive to the question posed by defense counsel, (although this is doubtful), the volunteering by the witness, without being responsive to any question, that he had a list of persons known to the Sheriff's department and to agents that were working in the area would not justify the government's voluntarily inquiring

of the agent *whether these defendants* were on that list. The inquiry by counsel in cross-examination in no way warranted the introduction of hearsay testimony that the Sheriff and other agents had made up a list *which list included these defendants as primary targets.*

Thus the government successfully put in evidence testimony relating to general bad reputation or character when the defendants had not, themselves, put their character in issue. This is impermissible. See Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

Then to compound the error government counsel had this experienced witness, who had testified in some 200 to 400 cases previously, repeat the extremely damaging evidence that these defendants were on the Sheriff's primary target list. See, for a discussion of the reception of otherwise impermissible evidence where the issue is initially raised by defense counsel, Hurst v. United States, 337 F.2d 678, (5th Cir. 1964).

We are forced to conclude that it was prejudicial error for the trial court to permit this evidence about the existence of a Sheriff's primary target list on which these two defendants were listed to be introduced in this trial. The damaging effect of such evidence is clear.

Finally, appellants complain of that part of the prosecuting officer's argument to the jury in which he not only vouched for the government agent who was the principal witness on the trial but made other statements not supported by anything in the record relating to his duties. This statement is as follows:

"However, I would like to add that the attitude of Mr. Wilder on this assignment—the fact that he had never been in the Jacksonville area before; he never knew Mr. Hayes or Mr. Brown before arriving here; the chances that he took, in the sense of being an undercover agent, and working as an undercover agent—he had no interest in this case, other than doing

his job. *And I personally feel he did a real good job. I feel that he was doing his duty to his country, and to the organization of which he was a member—and he was doing it to the best of his ability, and it was successful, in my opinion."* (Emphasis supplied).

As we have stated above the government concedes that it was error for counsel to vouch for this government witness. However, it is contended by the United States that this was harmless error and it should be overlooked. This court has passed too many times on this kind of comment by prosecutors to permit it to continue by allowing it to be brushed under the rug under the harmless error doctrine. See Gradsky v. United States, 5 Cir., 373 F.2d 706; Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L. Ed.2d 231; McMillian v. United States, 363 F.2d 165 (5th Cir. 1966); Dunn v. United States, 307 F.2d 883 (5th Cir. 1962) and Steele v. United States, 222 F.2d 628 (5th Cir. 1955).

There is absolutely no justification for the reference to the danger undertaken by Wilder for working as an undercover agent and, of course, as we have said in the cases cited above, it was improper for government counsel to state that he personally felt the agent did "a real good job" or that he felt that "he was doing his duty to his country" and finally that work he was doing "was successful in my opinion."

The first part was not supported by anything in the record. The latter part was impermissible comment by the prosecuting officer, as we have made clear time and again in the cases cited.

Thus, we are compelled to conclude that these three serious errors deprived the defendants of a fair trial and must therefore reverse their conviction and sentence and remand the case for a new trial.

Reversed and remanded.