**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerry JOSEPH, Defendant-Appellant.**

**No. 75–1187.**

United States Court of Appeals,
Fifth Circuit.

June 14, 1976.

John Volz, Federal Public Defender (Crt. Apptd. not Under Act), Richard T. Simmons, Jr., Asst. Federal Public Defender, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., George R. Simno, III, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The defendant, Jerry Joseph, was convicted on two counts of knowingly and intentionally distributing heroin in violation of 21 U.S.C.A. § 841(a). On appeal Joseph presents five points for review:

(1) that the evidence was insufficient to support his conviction;

(2) that he was denied his Sixth Amendment right to compulsory process for obtaining witnesses;

(3) that his motion for a mistrial should have been granted because of prejudicial prosecutorial remarks to the jury during closing argument;

(4) that he was denied due process because of the nature of the Government's undercover operation which led to his arrest; and

(5) that requested evidence concerning the nature of two informants' oral agreement with the Government was

withheld in violation of the principles of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We find that none of these points warrants reversal.

### Sufficiency of the Evidence

■ Joseph's arrest occurred at the conclusion of a six month investigation which resulted in over one hundred controlled heroin purchases involving sixty-two individuals. The defendant was arrested and convicted for making two separate sales of heroin to undercover detective Gail Roberson during April 1974. Officer Roberson testified that on each occasion she informed Joseph how much heroin she wanted to buy, gave him the purchase price, waited for him to return with the drug, and received the heroin from the defendant.

Working with Officer Roberson in these operations were undercover detective James Lewis, disguised as a cab driver, and two informants. Although Officer Lewis could not actually see the heroin purchases, he corroborated the testimony of his partner as to the events leading up to the sales, including the initial meeting of the defendant and Officer Roberson. The informants introduced the undercover officer to defendant. Not called by the Government but by the defense, both informants corroborated Officer Roberson's account of the transactions.

Joseph denied having ever sold narcotics to anyone. The defense's theory of the case was that Officer Roberson did not purchase the heroin from Joseph, but received the drugs from the informants who obtained the narcotics from sources other than the defendant and then falsely gave Roberson the defendant's name as the seller.

In determining the sufficiency of the evidence the test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to prove defendant's guilt beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Warner,* 441 F.2d 821, 825 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Defense counsel conducted a vigorous cross-examination of the police officers and the informants, who were called by the defense as adverse witnesses. The jury heard the testimony of all these witnesses and determined what credibility should be placed on each. The evidence was sufficient for a reasonably-minded jury to conclude beyond a reasonable doubt that Joseph did in fact make the two alleged sales of heroin.

### Right to Compulsory Process

In order to support its theory that the informants made the purchases, not Officer Roberson, the defense attempted to subpoena as a witness a person who previously had pled guilty to a sale of heroin in an entirely unrelated matter arising out of the same Government investigation. A written offer of proof stated the witness would testify that, at the F.R.Crim.P., Rule 11 hearing to establish a factual basis for the witness' plea,

> Detective Roberson testified that on March 11, 1974, I sold heroin to her. At this time I informed the Judge that although I had made the sale on the date in question, I had transferred the heroin to [the informant], not Detective Roberson.

The defense contends this testimony would show a method of operation which would impeach the credibility of Officer Roberson, the chief prosecution witness. The district court judge refused to grant defendant's request to call the witness at Government expense because he considered her proffered testimony irrelevant.

■ The right of a criminal defendant to call witnesses at Government expense is not absolute. Although a trial court must grant a subpoena if a defendant alleges facts to be within the witnesses' knowledge which, if true, would be relevant to an issue in the case, the trial court, nevertheless, still possesses broad discretion in this area. *United States v. Joyner,* 494 F.2d 501, 506–507 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974). In exercising this discretion the trial judge should "weigh numerous factors, including materi-

ality, relevancy, and competency, in deciding whether to grant the request for a subpoena." *United States v. Romano,* 482 F.2d 1183, 1195 (5th Cir. 1973), *cert. denied,* 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974). We do not find that the judge abused the broad discretion afforded him in denying the motion to produce this witness at Government expense under the circumstances of this case.

### The Prosecutor's Remarks

■ During the defense's closing remarks to the jury, counsel emphasized that the Government only wanted the jury to see and hear the two narcotic agents and that it had attempted to minimize the role of the two informants. In response to this comment, the prosecutor made certain improper statements which, the defendant contends, warrants a new trial. According to defendant, the thrust of these comments was to inflame the jury into an unfounded concern over the safety of the two testifying informants and raised the inference that if Joseph was found not guilty, he would have both motive and opportunity to kill the informants. The judge sustained objections to these comments but denied a motion for mistrial. The jury was strongly cautioned by the judge to disregard these statements. Defendant claims, however, that the prejudice engendered in the jury could not be eliminated by cautionary instructions. We disagree. Placed in proper context, it is apparent that the prosecutor's statement that drug addicts might attempt to kill the informants did not directly refer to the defendant.

We note, however, that our affirmance should in no way be construed as condoning the actions of the Government prosecutor. The statements were error. They should not have been made and went beyond the proper role that a prosecutor should adhere to in closing arguments. But in placing this error in its proper context, we must look to see the harm suffered by the defendant. In the circumstances of this case, we find the harm to be nonprejudicial and one which had no substantial effect on the

jury's verdict. An otherwise valid conviction should not be overturned where there is no reasonable possibility that the error might have contributed to the conviction. *Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963). Here, reversal is avoided by the strong case of guilt that was presented against defendant. We agree with the statement in *United States v. Burks,* 508 F.2d 672 (5th Cir.), *cert. denied,* 421 U.S. 1012, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975), that

> Viewing the record as a whole, including those portions of the prosecutor's argument to which objection was made, in the context of a hotly contested trial and in light of the cautionary instructions given by the trial court, we are convinced that no reversible error was committed. . . . Considering the totality of all the circumstances, it is our conclusion beyond a reasonable doubt, that even if the argument was improper it constituted no more than harmless error. A defendant is entitled to a fair trial not a perfect one.

*Id.* at 673 *quoting United States v. Rhoden,* 453 F.2d 598, 600 (5th Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972).

### The Undercover Operation

■ Joseph argues that he was denied due process because of the nature of the Government's undercover operations. He claims that the use of paid informants, at least one of whom was financing his own habit with the money paid by the Government, tends to produce the type of "frame-up" which this Court condemned in *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962). But in *Williamson* the Government paid a contingent fee to an informant for producing evidence against a particular named defendant. Here, however, the informants were paid for setting up drug purchases by the undercover agents with no particular person as the target of the buying efforts. Agents Roberson and Lewis went with the two informants and attempted to buy from whomever might be found who would enter into a transaction. This factor takes this case outside the ambit of

the *Williamson* doctrine. *See United States v. Oquendo,* 505 F.2d 1307, 1310 (5th Cir. 1975); *United States v. Jenkins,* 480 F.2d 1198, 1199–1200 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 256, 38 L.Ed.2d 151 (1973).

### The Informants' Agreement with the Government

Finally, Joseph contends that the prosecution improperly withheld certain evidence he requested concerning the nature of the informants' agreement with the Government in violation of the principles established in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* holds that suppression by the prosecution of material evidence favorable to an accused, who has requested it, violates due process irrespective of the good faith or bad faith of the prosecution. On the Government's protestation that the *oral* agreement with the informants was not *Brady* material, the magistrate ruled that any *written* agreement must be turned over to the defense. There was no written agreement.

■ There seems to be no dispute that an informant's arrangement with the Government is the type of evidence which must be produced on request. Construing *Brady,* this Court in *Williams v. Dutton,* 400 F.2d 797 (5th Cir. 1968), *cert. denied,* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969), concluded that the Government has "an affirmative duty . . . to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence." *Id.* at 800. The existence of an agreement between an informant and the Government, for example, surely is material to the defendant's case. With this information, defendant can impeach the individual's testimony on the stand, a factor that might weigh in the jury's determination of credibility. Moreover, the Supreme Court has emphasized that "when the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within . . . [the *Brady* ] general rule." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct.

763, 766, 31 L.Ed.2d 104, 108 (1972), *quoting Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1220 (1959).

■ Based upon the foregoing principles of law, we disagree with the district court and the magistrate as to the exclusion of the oral agreement from the *Brady* rule. It would be incongruous to hold that an oral agreement falls outside the scope of *Brady,* a written agreement within. An agreement with the Government in a drug case is usually of an oral nature, seldom in writing. The formalities of a written instrument are the exception, not the rule. We think, therefore, that the *Brady* rule should not be circumvented by excluding an oral agreement which, if written, would be governed by the *Brady* mandate. *See United States v. Acosta,* 386 F.Supp. 1072, 1080 (S.D.Fla. 1974), *rev'd on other grounds,* 526 F.2d 670 (5th Cir. 1976).

The decision in *Brady* was based on a due process consideration that the defense could not adequately prepare its case without disclosure by the prosecution of exculpatory evidence. The rule in *Brady* does not compel automatic reversal if not followed. We therefore look to see if the error was harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The application of the harmless error rule to a *Brady* violation was recently recognized by this Court in *United States v. Prout,* 526 F.2d 380, 388–389 (5th Cir. 1976).

Evidence of the agreement was revealed by a Government witness on cross-examination. Thus, the existence of the agreement with the Government was made known to defendant prior to the presentation of his case. The existence of the agreement was corroborated by informants themselves when called by the defense as adverse witnesses.

■ This information could only have been used to impeach the credibility of the informants and its existence was adequately brought before the jury so that it could be used in their deliberations. It seems, therefore, that defendant's case was not prejudiced by the Government's failure to

disclose. In *United States v. Felts,* 497 F.2d 80 (5th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974), one of the defendant's points on appeal was the denial of his pretrial motion for discovery. The motion sought to obtain information concerning an informant, information defendant contended was essential to his entrapment defense. He relied on *Brady v. Maryland.* In rejecting his argument, the Court noted that between the Government's first two witnesses, all the information sought had already been divulged. Consequently, the Court believed defendant had adequate time to use the information for his defense, and he suffered no prejudice in the denial of his motion.

*United States v. Prout, supra,* is similar to the instant situation. There one of the issues on appeal involved the Government's failure to disclose the full terms of a deal made with one of the prosecution witnesses. This evidence was potentially usable to impeach the witness' credibility. The Court stated, however, that a new trial was not required since the reliability of that witness was not determinative of guilt or innocence, and disclosure of the evidence would not have altered the verdict.

> We hold that where, as here, the only error lies in failure to disclose every particular of a deal with a government witness who could not, by any stretch of the term, be called a key witness, but rather, whose testimony was merely cumulative, the error falls within the harmless error doctrine . . . .

526 F.2d at 389.

The result reached in *Prout* would also apply to the case *sub judice.* These informants could not be labeled as key witnesses for the prosecution. They were not called to testify by the prosecution. The Government's case did not hinge on their testimony. Here the jury was apprised of the agreement between the informants and the Government, as well as the nature of the deal, *i. e.,* supplying money in return for information. *Cf. United States v. Romano, supra,* 482 F.2d at 1193–1194. We hold the error to be harmless beyond a reasonable doubt.

Affirmed.

TUTTLE, Circuit Judge (dissenting):

With deference, I dissent. Here the Court lets stand a conviction of a young man, not previously known either as a user, addict or dealer, for making two heroin sales, at a trial in which the government attorney made statements to the jury which, in the words of the Court's opinion, "placed [him] in a group of individuals who were 'drug addicts' and who might have occasion to commit other crimes, perhaps even murder." The Court rationalizes its action by saying that while it was error for counsel to make the statement, "an otherwise valid conviction should not be overturned where there is no reasonable possibility that the error might have contributed to the conviction," citing *Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173. *See, also, Kotteakos v. United States,* 326 U.S. 711, 66 S.Ct. 169, 90 L.Ed. 420 (1945). If we appraise the effect of the highly inflammatory closing argument by this standard I cannot agree that there was no "reasonable possibility that the [improper remarks] might have contributed to the conviction," *Fahy v. Connecticut, supra.*

Since the Court's opinion does not quote the comments which we all agree constituted error, I think I should quote them here. The one government agent who testified to the alleged transactions with Joseph said she was introduced to Joseph by two homosexual transvestite addict-informers who were present at the alleged sale. The government did not call the informers as witnesses, but the defense did so, apparently for the purpose of showing that they were persons guilty of a wide catalogue of violations of moral and criminal laws, and that they were paid informers for the government and that if a sale was made it was made by them to the agent. In his final argument to the jury, government counsel sought to answer defendant's argument criticizing the government for not

calling the two informers as witnesses to the alleged transaction. The following colloquy occurred:

"Mr. Simno [prosecutor]: . . . Consider also, ladies and gentlemen, the fact that these individuals had made over 120 cases. Why are they not sitting here? For the same reason that they have been under guard on the fourth floor and have been delayed in coming down here when they were called.

Mr. Simmons [defense counsel]: Your Honor, I'm going to object at this time. This is beyond the evidence.

The Court: That's correct. It's outside the evidence. Disregard that fact.

Mr. Simno: You decide it, ladies and gentlemen, you decide. These individuals have had hassles before with fellow drug addicts. They have robbed them, they have taken their money, they have also sold to them on numerous occasions, and they will also kill them in a minute if they can get their hands on them.

Mr. Simmons: Your Honor, at this time, I would like to approach the bench.

(Whereupon, the following proceedings were had at the bench, outside of the presence of the jury.)

Mr. Simmons: At this time, your Honor, I would like to make a motion for a mistrial in this case, because of the remarks of the prosecution being so inflammatory [sic] as to prejudice the jury against my client, that the jury would not be able to give him a fair trial, make a fair and impartial judgment; or in the alternative, we ask, if the Court does not grant a mistrial, that it give a very strong admonition to the jury to disregard the remarks.

The Court: I will given them a very strong admonition to disregard the remarks. All right, Motion denied.

(Whereupon, the following proceedings were had in the presence of the jury.)

The Court: Ladies and gentlemen of the jury, you will disregard the remarks of the United States Attorney as concerns the fact that somebody might attempt to kill these witnesses and the fact that they were under guard and so forth. That hasn't been brought out in this trial, and I agree, that it should not be brought in in this case, so, please disregard those remarks and put it out of your mind. That has no part of this case, what might happen to them."

Thus, government counsel, even after being put on notice by the Court, proceeded to give evidence against the accused: first, that he was a drug addict, and second, that he and others had *robbed* the informers and *sold to them on numerous occasions,* and third, that the defendant and "fellow addicts" *would kill* the informers in a minute, etc. It is difficult for me to conjure up improper argument of counsel more highly inflammatory or more likely to be prejudicial.

Here, once again, we give the prosecuting officer a very light tap on the wrist by saying that "our affirmance should in no way be construed as condoning the actions of the government prosecutor. The statements were error. They should not have been made and went beyond the proper role that a prosecutor should adhere to in closing arguments." We have said this or something like it so many times that it almost becomes boiler plate, and the prosecutors persist in ignoring what we say. For recent cases in which we characterized the prosecutor's statements as improper but affirmed, see *United States v. Rhoden,* 453 F.2d 598 (5th Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972) and *United States v. Scaglione,* 446 F.2d 182 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971).

For cases in which this Court felt that the bounds of fairness had been passed and reversed, *see Handford v. United States,* 249 F.2d 295 (5th Cir. 1957) and *United States v. Brown,* 451 F.2d 1231 (5th Cir. 1971).[1] In the *Brown* case we stated the

---

1. There the prosecutor in his argument stated: "However, I would like to add that the attitude of Mr. Wilder on this assignment . . . the chances that he took in the sense of being an undercover agent. . . . And I personally feel he did a real good job.

facts of life that still trouble me if we permit the error in this record to go unredressed. We said:

> "This court has passed too many times on this kind of comment by prosecutors to permit it to continue by allowing it to be brushed under the rug under the harmless error doctrine."

*Id.* at 1236. *See also Gradsky v. United States,* 373 F.2d 706 (5th Cir. 1967) and *McMillian v. United States,* 363 F.2d 165 (5th Cir. 1966).

In *Dunn v. United States,* 307 F.2d 883 (5th Cir. 1962), even without a motion for mistrial having been made, we found it necessary to reverse because of improper closing argument.[2] We there announced a principle of law that, it seems to me, is much more wholesome and fair than that announced today:

> "In every case involving improper argument of counsel, we are confronted with relativity and the degree to which such conduct may have affected the substantial rights of the defendant. *It is better to follow the rules than to try to undo what has been done.* Otherwise stated, one 'cannot unring a bell;' 'after the thrust of the saber it is difficult to say forget the wound;' and finally, 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it.'" (Emphasis added).

*Id.* at 886.

## BRADY MATERIAL NOT TURNED OVER TO THE GOVERNMENT.

I, of course, agree with the Court that the failure of the trial court to require the government to furnish the details of employment and compensation paid to the two informers who, according to the government's case, introduced Joseph to the agent, was error in light of the *Brady* rule. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But I strongly disagree with the Court's nullifying the effect of the rule by using what to me now seems to be a dangerously growing tendency to avoid a reversal by applying the label "harmless error."

Here, the defendant, who, I repeat, had no prior record as an addict or dealer, sought to show that the single eyewitness who testified for the government as to the actual sale, had worked six months with these same two informers; that they had worked up 120 cases; that occasionally the agent acquired the buy from one of the informers, but usually "tried to" buy it from the suspect. Doubtless it was Joseph's hope that the jury would believe his story that he had not had any contact with the agent and that he had tried to avoid the two informer-addicts. He wished to show by obtaining pre-trial information from the government how much the informers were paid and what the terms of their employment were. According to the government's witnesses they were present at the alleged transactions. It is extremely difficult for me to see how the failure of the government to supply this information before the trial to permit defense counsel to prepare for cross-examining the agent and to pin down discrepancies in the testimony of the informers when they were called was "harmless beyond a reasonable doubt." Such is the standard for determining whether *constitutional* error is harmless, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Null v. Wainwright,* 508 F.2d 340 (5th Cir. 1973). The government witness, upon cross-examina-

---

I feel that he was doing his duty to his country, and to the organization of which he was a member—and he was doing it to the best of his ability, and it was successful, in my opinion."

**2.** The improper remarks were:

"In his opening the prosecutor had said:

'This case is replete with fraud and is one of the most flagrant cases we have ever tried in the Southern District of Georgia.'

*Id.* at 885. And in his closing he stated:

'[H]ow was Mr. DeLaigle going to get the job? Mr. Dunn was the Mayor. He got them from Mr. Dunn. Whether those accounts (amounts?) (*sic*) were reimbursement for expenses or kickbacks—any of you gentlemen that know anything about politics, when you throw out that much money, why, somebody is going to have to take (pay?) (*sic*) somebody else.'"

tion, gave ambiguous testimony as to the amounts paid—whether each informer was paid $30 or $60 or they were both paid a total of $30 to $60 for each case was unanswered. This makes a difference of from $3600 to $7200 for each or for both, together with a further amount that one of the informers testified he got: " . . . and sometimes when we didn't go with them, and we needed money for rent or food, the government would give us money." In sum, the evidence sought by the *Brady* motion was *not furnished by other witnesses.* Thus the cited cases, *United States v. Prout, supra,* and *United States v. Felts, supra,* are not applicable.

I would give more weight than does the Court to the *Brady* principle, which, after all, rises to constitutional dimensions as expanding a requirement of due process. I do not think we should so readily denigrate a principle of which this Court said in *Williams v. Dutton,* 400 F.2d 797 (5th Cir. 1968), *cert. denied,* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799:

> "The *Brady* decision culminates a series of cases in which the Court proscribed the use by the prosecution of perjured testimony and the active suppression of exculpating or favorable evidence. It is now clear that *Brady* imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct *or impeaching* evidence." (Emphasis added.)

*Id.* at 800.

I would hold that the two errors recognized by this Court to have occurred require a reversal and remand for a new trial.