CHARLES CARROLL, Associate Judge.
By a four-count information the appellant-defendant Stanley Eshuk was charged with (1) sale or delivery of a controlled substance, Cannabis, to one Dennis Staut on April 24, 1974; (2) possession, or delivery without consideration, of a quantity of such substance on said date; (3) sale or delivery of such a substance to Dennis Staut on April 30, 1974; and (4) possession of such substance on April 30, 1974.
Prior to trial the defendant filed a motion to dismiss for alleged improper governmental conduct, based on circumstances which are set out below. The motion was denied by the trial judge before whom it was heard. Thereafter trial of the defendant was commenced before another judge. Because of a necessity therefor which arose, a mistrial was declared. Thereupon, by oral motion, the defendant renewed his prior motion for dismissal. After a further hearing thereon, the court entered an order of dismissal as follows: “This cause having come before the court upon the defendant’s oral motion to dismiss, and the court having heard argument of counsel, it is hereby Ordered and Adjudged that the defendant’s oral motion to dismiss is hereby granted.”
The State has appealed therefrom. We find error and reverse. The governmental conduct which prompted the court to enter the foregoing order, in our opinion was not such as should have brought about that result.
The above charges against the defendant followed sale of Cannabis by the defendant to an undercover police officer, Dennis Staut, who negotiated and consummated the purchase thereof from the defendant, in the presence of an informant, Michael Woosley, after the officer had been introduced to the defendant by Woosley.
Detective Staut and another police officer of the Department of Public Safety of Dade County arranged for Woosley’s assistance as an informant after Woosley had been arrested by police of the City of Opa-Locka' on suspicion of having committed several burglaries. There was a dispute as to whether the Metro officers had promised Woosley that if he worked with them the matters thus under investigation would be dropped. The officers contended they did not. There was no evidence of any formal action of that character. It does appear that such investigation was not progressed during the times involved here.
According to testimony of Officer Staut given at the trial, the transaction for which the defendant subsequently was arrested and so charged and prosecuted was as follows. The informant Woosley, and officer Staut posing as a civilian, encountered Eshuk in a bowling alley. There Woosley, who was known to Eshuk, introduced Staut to Eshuk. Staut inquired of Eshuk as to what he had to sell. Eshuk led them outside to his motor van parked nearby. There he and Staut, in the presence of Woosley, discussed quantity and price of Cannabis which Eshuk produced, contained in a plastic bag. A sample taken therefrom was placed in a vial and delivered to Staut (for testing, etc.). That occurred on April 24, 1974. On April 30, Woosley called Eshuk who fixed a time and place for a meeting later on that day. There Woosley and Staut met with Eshuk in his van at which time Staut purchased the Cannabis from Eshuk (one pound) for which he paid the agreed price. Thus the case against Eshuk, such as it was, was made and completed by April 30, 1974.
Woosley was not paid for his services in that transaction which consisted of introducing the officer to the defendant, being present at the first meeting of the parties in Eshuk’s van, and contacting Eshuk regarding the time and place of the second meeting and being present there. It ap *706 pears that sometime after consummation of the Eshuk sale transaction, the informant performed some services involving similar type transactions of the police with other persons for each of which he was compensated for his services. In some instances, he was so paid after making such an introduction, and in others after an officer had made a purchase as a result of such an introduction. Those later services of Woos-ley had no relation to Eshuk, or to the case against him.
The only governmental misconduct that could affect this case was that which took place before or at the time of the Eshuk sale and delivery in the transactions of April 24 and April 30, 1974. What the informant himself may have done after those dates, and the action or non-action of the officers in relation thereto and their use of the informant in some other unrelated matters after April, could have no bearing on the case theretofore made against Eshuk.
First, as to the conduct of the officers relating to the case made against the defendant in April, 1974, the officers of the Public Safety Department of Dade County used the assistance of the informant Michael Woosley in the transaction with Eshuk after Woosley had been arrested by police of the city of Opa-Locka on suspicion of burglary, and while such investigation was not being pressed. No immunity was granted to Woosley with respect to such prior matter or matters, and under the law he remained subject to prosecution therefor if such should become warranted when further investigated.
Second, as to subsequent conduct of the informant and the officers, after April, and unrelated to the case previously made against Eshuk, some weeks after the completion of the above described sale transaction with the defendant, the informant burglarized the defendant’s apartment in Opa-Locka and took some articles therefrom (spoons of the kind used in sniffing cocaine, and a jar of mushrooms). When that occurrence was reported to Metro Officer Staut by an Opa-Locka detective, according to Staut he told the Opa-Locka detective he was free to proceed on that matter as he felt was required. The State Attorney’s office determined against instituting prosecution of Woosley at that time, because of a policy not to do so at a time when Woosley was to be a witness in the case which had been made in April against Eshuk. No immunity was granted to Woosley in that connection, and under the law he remained subject to prosecution therefor at a later time.[1] In breaking into the defendant’s *707 apartment, Woosley acted on his own and not with knowledge of or at any direction by the officers. That break-in had no reference to the prior April offense of the defendant. Since trial of the defendant would involve only evidence of the April sale, therefore, aside from its obvious inad-missability, nothing found or obtained by Woosley on that break-in could have any relevancy or bearing with reference to the defendant’s prosecution for said April transaction. Clearly that incident did not represent any governmental action taken for the purpose of obtaining a conviction of Eshuk for the prior offense. The commission of crimes by the informant which were unrelated to the transaction for which the defendant was charged and to be tried, and even the failure or delay in prosecuting the informant therefor, did not violate any right of the defendant or otherwise form basis for dismissal. See United States v. Acosta, 526 F.2d 670 (5th Cir. 1976).
Also, after the April sale transaction with the defendant and prior to the defendant being brought to trial, Staut and another Metro officer similarly used the assistance of Woosley as an informant on matters involving some other persons, and on each such occasion the informant was paid for his services. How Woosley was used (after April) and how or what he was paid for such subsequent services, unrelated to Eshuk, was immaterial in this case.
The difficulty which those charged with law enforcement have in controlling local traffic in drugs is such that use of confidential informants as was done in this instance, if not essential to success, is of material assistance. Necessarily, the practice is general. Frequently such informants are persons who are on probation, or may be subject to pending criminal prosecutions, or under investigation of criminal offenses. Use of an informant in such status is not a violation of a defendant’s constitutional rights, although it has led to a firm rule that when such an informant who has been so used testifies in a case he may be cross-examined regarding any such matters, as bearing on his bias or on his interest with respect to the testimony which he gives in the case.
In arguing in support of the dismissal order, the appellee states rules pronounced in Federal eases that limitations of the constitution will be effective when the government activity in question violates some protected right of the defendant, and that fundamental rights guaranteed to a citizen by the fifth and fourteenth amendments to the constitution may not be violated by law enforcement agents in an attempt to convict a defendant. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); Williamson v. United States, 311 F.2d 441 (5th Cir. 1963); United States v. Mahoney, 355 F.Supp. 418 (E.D.La.1973).
Those cases relied on by the appellee do not furnish authority to hold that where the undercover officer was introduced to Eshuk by an informant who was subject to an investigation for certain prior offenses, not then being pressed, that was governmental misconduct in violation of constitutional rights of Eshuk, or was governmental conduct so outrageous that due process principles absolutely barred the prosecution.
In Rochin v. California, supra, the conduct which prompted reversal of a cocaine possession conviction was that when the defendant, on apprehension, swallowed evi *708 dence consisting of a capsule of cocaine, the officers attempted forcibly to retrieve the capsule from the defendant’s mouth, and, failing in that, forcibly required the defendant to submit to having the capsule extracted by a stomach pump. The distinction between that and the present case is apparent.
United States v. Russell, supra, did not involve government misconduct. The question there was one of entrapment.
In Hampton v. United States, supra, the defendant appealed following conviction based on a sale by him to undercover federal agents of heroin which had been supplied to the defendant by an informant. Although the defendant had admitted his predisposition to commit the offense, he claimed error for failure of the court to charge the jury that, notwithstanding his admitted predisposition to make the sale, if the jury should find the heroin which he sold had been supplied to him by an informant he should be acquitted. The judgment was affirmed.
In Williamson v. United States, supra, an informant engaged by government officers was sent out to attempt to make a “buy” of illicit whiskey from either of two designated persons known to the officers to be main dealers therein, “Big Boy” Williamson and his half-brother. The informant was promised a fee of $200 if he could make a purchase of illicit whiskey from “Big Boy”, and $100 if he could make such a purchase from the half-brother. Acting alone, the informant arranged a purchase of 179 gallons of illicit whiskey from “Big Boy”. One Low-rey, who transported the whiskey to the place of the sale and delivery, also was charged. “Big Boy” Williamson and Low-rey were convicted, and appealed. The judgment was reversed, the majority expressing the opinion that to offer to pay an informant a substantial sum ($200 in that instance) as a contingent fee if the informant could make a case against the defendant was a practice too likely to involve entrapment or other conduct violative of the defendant dealer’s constitutional rights. This case clearly differs from Williamson. Here the informant was not dispatched to make a purchase of contraband from a specified individual. The part of the informant in the Eshuk transaction in this case was not such as might be considered to lead to entrapment, and was not legal entrapment. See United States v. Joseph, 533 F.2d 282, 285-286 (5th Cir. 1976); United States v. Onori, 535 F.2d 938, 942 (5th Cir. 1976). In the latter case, regarding Williamson in which the informant who made the government’s case had been promised a specified sum of money for successfully incriminating the defendant, the court in Onori stated: “Williamson has been subsequently limited to require reversal of a conviction only when the specific defendant was picked out for the informers efforts by a government agent. See, e. g., United States v. Joseph, 533 F.2d 282, 285 (5th Cir. 1976)” [and citing other cases].
In Joseph, where the use of informants was similar to the use of the informant in this case, the court held Williamson was not applicable, and in explanation thereof said:
“ * * * But in Williamson the government paid a contingent fee to an informant for producing evidence against a particular defendant. Here, however, the informants were paid for setting up drug purchases by the undercover agents with no particular persons as the target of the buying efforts. Agents Roberson and Lewis went with the two informants and attempted to buy from whomever might be found who would enter into a transaction. This factor takes the case outside the ambit of the Williamson doctrine”. [citations omitted].
The limitation placed on the Williamson rule relating to employment of an informant on a contingent fee basis by the later cases of Joseph and Onori renders without merit the argument of the appellee that the dismissal in this case should be upheld on authority of Williamson on the theory that the use of the informant in the Eshuk transaction, without pay, actually was on a contingent fee basis because it was understood by the officers that if he should establish his credibility and value in the initial *709 transaction in which he was used he would be used and paid for later such transactions. Assuming that could be considered as a contingent compensation arrangement in the Eshuk transaction, the limited Williamson rule is not applicable to the facts of this case. United States v. Joseph, supra.
In United States v. Mahoney, supra, a District Court decision, a seaman importing marijuana was arrested leaving ship. The seaman offered to cooperate, to aid the government officers in apprehension of his customers with whom he would arrange dealings with the confiscated marijuana which was returned to him for that purpose. He was permitted to do so, resulting in an arrest of his customer. The defendant moved to dismiss, claiming that putting the confiscated marijuana back on the market by allowing it to be so used by the informant amounted to governmental misconduct such as to justify and require dismissal of the prosecution. The motion to dismiss was denied, without prejudice to submit the defense at trial. The question there was whether such use of the confiscated marijuana amounted to “an intolerable degree of governmental participation in the criminal enterprise”.
The use made of the informant incident to the transaction for which Eshuk was arrested in the instant case (introducing the officer and witnessing the sale made to the officer) did not violate any constitutional right held by the defendant. The use made of the informant incident to the sale transaction in this case was no more than routine procedure in such matters. This case did not involve any unfair method or spectacular use of an informant.
When Woosley, who knew Eshuk, introduced Eshuk to Staut what difference could it make whether Woosley was “clean” or was in trouble with the law? The nature of Woosley’s part in the Eshuk transaction was such that the fact that he was on probation and had been under investigation for certain other crimes, would furnish no basis in law to regard the officer’s “buy” from Eshuk as having been made in violation of Eshuk’s constitutional rights. Those circumstances had no relevance to the “buy” which was made in this case.
Moreover, the existence of such circumstances relating to the status of the informant with regard to the law would be available to the defendant to be shown in evidence, to bear on the bias or self-interest of the informant as to his testimony if given at trial. Morrell v. State, 297 So.2d 579 (Fla. 1st DCA 1974); Fulton v. State, 335 So.2d 280 (Fla.1976); United States v. Acosta, 526 F.2d 670 (5th Cir. 1976).
In summary, we hold that the use of an informant to introduce the undercover officer to the defendant in this case, which otherwise would not be a violation of any constitutional right of the defendant, did not become so because of the fact that the informant had a criminal background or even if he had criminal charges pending against him, and therefore was no ground for dismissal. United States v. Joseph, supra; United States v. Onori, supra. Further we hold that the subsequent conduct of the informant and the officers in relation thereto and his use by the officers in other cases, all of which occurred after and unrelated to the April sale transaction with the defendant, were no basis or reason in law to cause the dismissal of this prosecution of Eshuk for the completed April transaction upon which it was based.
Accordingly, the dismissal order appealed from is hereby reversed, and the cause remanded for further proceedings.

. During the portion of the trial which was held, Staut, the undercover officer who dealt with Woosley, testified that prior to the Eshuk transaction there was no discussion as to what amount of money would be paid to him; that nothing was paid to Woosley for his assistance in the instant case; and as to the reason he was not paid, Staut testified: “He was a brand new confidential informer, and I had not yet established his credibility. Therefore, I did not deem it necessary to pay him at this time until I could establish his real credibility”.
Further, when Staut was asked whether he at any time discussed with Woosley protection for him as to any crimes he should commit while working with the officers, Staut answered; “No, I did not. In fact 1 informed him that we do not condone any illegal activity by our confidential informers”.
Staut testified that after Opa-Locka detective Burgin informed him of the subsequent burglary of Eshuk’s apartment by Woosley, he asked Woosley about it, and Woosley admitted it. When Staut was asked what he did after obtaining such information, he testified: “I told Detective Burgin to go ahead and handle the case how ever he had to handle it. If he had to arrest Michael Woosley, he should arrest him”. When asked why he himself did not present charges against Woosley for the burglary, Staut testified, “The Opa-Locka Police Department investigates their own burglaries. I deemed Detective Burgin to be a competent detective, and he was handling the case at the time; therefore, there was no reason for me to become involved”.
Staut also testified that prior to using Woos-ley as an informer his department was informed by Opa-Locka police they had a man there who had information regarding narcotics traffic who might be of help; that he went there at his sergeant’s request; that Opa-Locka police told him Woosley was there because stolen property had been found in the place where he and six other persons were residing, that they had no prosecutable case against Woosley for stolen property, and “that they had no charges pending on Mr. Woosley, that he was going to walk out that evening, and *707 they were not going to arrest him”; that Woos-ley’s Metro record was checked, and showed he had been arrested in 1972, and no charges were pending against him; that following the buy from Eshuk, some time after similar cases had been made against other persons with Woosley’s assistance, Woosley had informed Staut that his identity as an officer had become known to such persons; and that thereupon it was determined to arrest Eshuk and such other persons, fearing they might depart; that when he informed the Opa-Locka police that such arrests were about to be made there, was when he learned about the burglary of Eshuk’s apartment by Woosley; that the arrests of Eshuk and some others were made on or about June 10, 1974.