## STATE OF FLORIDA v. BLANCO, et al.
### Case No. 83-14561
Eleventh Judicial Circuit, Dade County
January 30, 1984

### APPEARANCES OF COUNSEL

**Barbara Levinson,** Assistant State Attorney, for plaintiff.
**L. Resenberg** for defendants.

### OPINION OF THE COURT

MORTON PERRY, Acting Circuit Judge.

Defendant Lazaro Jesus Santos was arrested and charged in an information with one count of trafficking in cocaine, in violation of Fla. Stat. Section 893.135(1)(b) (1981).

Santos moved to dismiss the information on the grounds of governmental misconduct by a confidential informant and by the City of

Hialeah Police Department. The Court held an evidentiary hearing on November 17, 1983, at which it heard testimony from the informant and was able to evaluate her demeanor and candor.

After hearing argument of counsel this Court orally granted the Motion to Dismiss, finding that the conduct of the untrained informant, paid on a contingent fee basis and acting without supervision by the Hialeah Police Department, was so shocking to the judicial conscience as to be violative of the defendant's rights to due process under the United States and Florida constitutions.

This Order formally sets out the Court's findings of fact and conclusions of law which underlie that oral ruling.

## I. FACTS

The confidential informant whose conduct shocked this Court's conscience was Yolanda Padron, a person who was paid solely on a contingency basis.[1] Her technique was to roam the streets of Hialeah, seeking chance encounters with men who had no previous history of involvement with drugs. She would engage the men in conversations which usually had sexual overtones, give them her telephone number, and later encourage them to find her a connection for a narcotics deal. Tr. at 26–38.

She used this technique successfully in approximately 35 cases over a three-year period, and was paid about $24,000 for her efforts. Tr. at 17–18, 26–27.

Supervision by the Hialeah Police Department was non-existent. No officer ever observed her chance encounters with defendants-to-be. No tape recordings were made of the initial meetings and Mrs. Padron received no effective instruction from narcotics detectives on how to avoid entrapping her victims. She had never even heard the word "entrapment" until it was brought up at a deposition.[2]

Mrs. Padron used her usual techniques with the defendant, Lazaro

---

[1] Mrs. Padron claimed at the evidentiary hearing that she was not expecting to be paid $500 for each kilogram of cocaine seized, but her testimony at two prior depositions was that she was paid at that rate for this and other cases. This Court finds her hearing testimony not to be credible on this point (and many others) and finds as fact that she was paid on the contingency basis she testified to at the depositions. See Transcript, Excerpt of Evidentiary Hearing (Nov. 8, 1983) at 35–38 [hereinafter "Tr."].

[2] Mrs. Padron's testimony was consistent on this point, throughout the evidentiary hearing and several prior depositions. One Hialeah police officer testified that he had discussed entrapment with her, but if so, it certainly didn't take. Tr. at 74.

The Hialeah Police Department manual did not instruct officers to tell informants of the dangers of entrapment, and the officer who was Mrs. Padron's contact in this case

Jesus Santos. She had never met him and had no information that he had any drug involvement when she happened to encounter him outside a Hialeah convenience store. They struck up a conversation laden with sexual (not narcotics) connotations, and she gave him her telephone number.[3] Tr. at 28–30. Mrs. Padron's purpose in meeting Mr. Santos was to involve him in a drug deal so that she could continue to make her living working for the Hialeah Police Department. Tr. at 31–33.

This informant was motivated by money. Although Mrs. Padron said that the biggest reason she worked as a confidential informant was because she hated drugs after her son became involved with narcotics, I do not find that testimony to be credible. She did not become an informant until eleven years after her son was arrested, and previously deposed that she began working as an informant because she needed the money. Tr. at 11–12, 57–58, 61–62. The Court finds as fact that Mrs. Padron was motivated to work as an informant by the money she was paid on a contingent basis.[4]

## II. LAW

Governmental misconduct is a matter of constitutional due process, a concept of fundamental fairness protected by both the United States and Florida Constitutions. See U.S. Const. amend. V; Fla. Const. art. I, Section 9. *Garrett v. State,* 390 So.2d 95 (Fla. 3d DCA 1980), cert. denied, 454 U.S. 1004 (1981); *Cotton v. State,* 85 Fla. 197, 95 So.2d 668 (1923).

When conduct by a police department or its agents is so unfair as to shock the judicial conscience, the victim's due process rights have been violated and any prosecution which resulted from such unfair conduct must be dismissed. *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962); *State v. Glosson,* No. AO-431, slip.op. (Fla. 1st DCA 1983).

After consideration of the Evidentiary Hearing testimony, the appli-

---

(who himself only received "field" training on how to handle informants) never discussed entrapment with her. Tr. at 75, 88–90. This Court finds that Mrs. Padron received no training on the subject and had no idea of how to tailor her conduct to avoid entrapment.

[3] Mr. Santos told her, "[Y]ou are what I need, what I am looking for." Tr. at 33. At least his approach was less direct than the defendant in another case, who made an obscene gesture indicating he wanted to have sex with her. Mrs. Padron also gave the gesturing defendant her phone number. Tr. at 30.

[4] Mrs. Padron's drug work accounted for about half of her family's income in the last 3 years. Tr. at 16–17.

cable case law and argument by counsel, this Court found that its judicial conscience was shocked and that Mr. Santos' Motion to Dismiss had to be granted. See Transcript of Proceedings (November 17, 1983) at 45–46. This Court concluded, as a matter of law, that both the federal and state due process rights given to Mr. Santos had been violated.

### A. *Constitution of the United States*

Employment of a confidential informant solely on a contingent fee basis carries such a danger for due process abuse that, when coupled with some other misconduct, dismissal is required under the United States Constitution.

In *Williamson v. United States,* an informant who "wanted to make some money" was targeted at three specific victims. 311 F.2d at 442. The Fifth Circuit held that, without careful instruction of the informant so that it was clearly understood, the informant would not induce his victims to commit a crime:

> [W]e cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed. Such an arrangement might tend to a "frame up," or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit. The opportunities for abuse are too obvious to require elaboration.

Id. at 44 (footnote omitted). Noting that it was the means to "make" the case which were "essentially revolting to an ordered society", then-Judge Brown suggested that "there may be equally offensive actions which are less spectacular" but which would also offend fundamental fairness. Id. at 445 (Brown, J. concurring).

The concept that federal due process is offended when there is a contingency fee informant "plus" some other misconduct is illustrated in cases which found ameliorating factors absent from the facts of *Williamson.* None of those saving graces are present here. See *United States v. Lane,* 693 F.2d 385 (5th Cir. 1982); *United State v. Joseph,* 533 F.2d 282 (5th Cir. 1976), cert. denied, 431 U.S. 905 (1977); *United States v. Garcia,* 528 F.2d 580 (5th Cir.), cert. denied, 429 U.S. 898 (1976); *Bullock v. United States,* 383 F.2d 545 (5th Cir. 1967); *Sears v. United States,* 343 F.2d 139 (5th Cir. 1965).

In *Lane,* the defendants were predisposed to engage in illegal conduct. 693 F.2d at 388. Police could corroborate the informant's

testimony in *Joseph*.[5] 533 F.2d at 284. There was careful instruction of the confidential informant in *Garcia,* an absence of a purely contingent fee, and corroboration of the informer's testimony. 528 F.2d at 584, 587. The defendant had a prior reputation for illegal behavior and the law of entrapment was carefully explained to the informants in *Bullock.* 383 F.2d at 546. And in *Sears,* the defendant Sheriff was known to have taken payoffs in the past. 343 F.2d at 144.

Here, the fact of a contingency fee is established, "plus", further misconduct and omissions, any one of which would be sufficient to ripen the use of contingency fees into a due process violation. Those factors include:

1. The failure by the City of Hialeah Police Department to give Yolanda Padron any effective training on how to avoid entrapment;

2. The chance encounter of the defendant, a man with no previous reputation for any illegal behavior;

3. The reek of sexual invitation;

4. The absence of any monitoring of the activities of Mrs. Padron, or of any means of corroborating how she induced this defendant to allegedly find a cocaine connection for her;

5. The large amounts of money paid to Mrs. Padron, both in dollar amount and as a percentage of her family income.

Each of these "plus" factors, when combined with the fact of a contingency fee, is sufficient to shock the judicial conscience of this Court into a realization that the defendant's federal due process rights were violated under the standards of the federal circuit which includes Florida. When taken together, they create a totally unconstitutional set of circumstances.

### B. *Constitution of the State of Florida*

It is fundamental law that the constitutional rights granted by a state may be greater than those provided by the federal constitution. Florida's due process clause is similar to the wording found in the fifth amendment of the Constitution of the United States, but its scope gives greater protection to defendants in criminal cases prosecuted as a result of the activities of an informant paid on a contingency basis. *State v. Glosson,* No. AO-421 slip.op. (Fla. 1st Cir. 1983).

While *Glosson* relied on the reasoning of *Williamson v. United*

---

[5] And, there was no targeted defendant, also true in the instant case.

166

*States,* 311 F.2d 441 (5th Cir. 1962), the First District affirmed the dismissal of a contingency fee case that had none of the "plus" factors mentioned in *Williamson* and its progeny. The *Glosson* court specifically rejected the rationale (a lack of named defendants as targets) used in one of the federal cases to distinguish *Williamson. Glosson,* No. AO-431 slip.op., 8 FLW at 1874 [refusing to apply *United States v. Joseph,* 533 F.2d 282 (5th Cir. 1976), cert. denied, 431 U.S. 905 (1977)].

The elimination of the contingency "plus" requirement is apparent in the *Glosson* court's condemnation of contingency fees *per se:*

> The State has admitted its involvement in a scheme whereby an individual is promised payment contingent upon his successfully making criminal charges against others to whom he is to sell cannabis. This "payment to make cases against criminal defendants" arrangement deprives the defendants of due process. The circumstances of this case are not a situation where the state merely seeks evidence of criminal activity but is more akin to the manufacturing of criminal activity by the state. *We cannot tolerate such behavior under our system of constitutional protections.*

8 FLW at 1874 (emphasis added, citation omitted).

This Court has found that the state was involved in a scheme here whereby an individual was promised payment contingent upon her successfully causing arrests. See Footnote 1, *supra.* Even without the aggravating factors which make the state's actions a violation of the federal constitution, this Court cannot tolerate such behavior under the Florida system of constitutional protections.

## III. CONCLUSION

The fundamental fairness guaranteed by both the United States and Florida constitutions requires that a police department and its agents permit people to go about their normal business without being approached by a quasi-official person and being placed in the position that the defendant ended up in here. See Transcript of Proceedings (November 17, 1983) at 30. Here we have an informant and a police department which treats its informants in such a manner as to create a totally unconstitutional set of circumstances. Id. at 45–46.

The judicial conscience of this Court is shocked. The conduct of Yolanda Padron and the City of Hialeah Police Department has been so outrageous that the Motion to Dismiss for Governmental Misconduct by defendant Lazaro Jesus Santos is granted.